[No. 15624-5-II.   Division Two.   September 14, 1993.]

RON AMES, ET AL, *Appellants,* v. THE CITY OF FIRCREST, ET AL, *Respondents.*

*Stephen L. Bulzomi* and *Messina Bufalini Bulzomi,* for appellants.

*John F. Kennedy* and *Law Office of John Francis Kennedy,* for respondents.

SEINFELD, A.C.J. — Ron Ames, the chief of police of the City of Fircrest, appeals a summary judgment dismissing his claims of defamation, breach of contract, violation of civil rights, and "wrongful action" against Fircrest and its manager, Don Morrison. Ames's action is based upon Morrison's release of information to the Morning News Tribune. The trial court accepted Fircrest's theory that it was required to grant disclosure to the press under the public disclosure act and rejected Ames's theory that the investigative records exemption to the act applied in this situation. We affirm.

In November 1989, the Pierce County Prosecuting Attorney's office, in conjunction with the sheriff's department, conducted a criminal investigation of the Fircrest Police Department. Fircrest requested the investigation because certain Fircrest police officers had alleged improprieties committed or allowed by department management.

The prosecutor's office completed its investigation on February 15, 1990. It concluded that some de minimis violations of statute might have occurred, but it found no evidence of criminal intent. Although the prosecutor's office

declined to file charges, it suggested an internal review of Fircrest police procedures and conduct.

On March 19, 1990, Morrison and Fircrest Mayor Armand Yapachino met with Ames to tell him that they had decided to conduct an internal followup investigation of the department and Ames's conduct and that during the pendency of the internal investigation, Fircrest was placing Ames on administrative leave. Also on March 19, Fircrest appointed Neil Moloney as acting chief of police and gave him the responsibility to conduct the internal investigation of the police department. Moloney completed this task by mid-April. The internal investigation focused on the conduct of Ames, Lieutenant Norman Neal, and Sergeant John Cheesman. Moloney concluded that the conduct of Ames, Neal, and Cheesman violated police department rules, Fircrest rules, civil service rules, and state law, but found no criminal intent or intent to act for personal gain.

Morrison reviewed the internal findings with Moloney and then with the city council. Morrison and Mayor Yapachino then sent Ames a letter informing him that the two investigations revealed violations of law, other wrongdoing, and mismanagement so serious that "the full range of disciplinary actions may be applied, including termination." The letter stated that the potential disciplinary actions it discussed were "separate from any criminal charges that may be filed".

Before Fircrest took any further disciplinary action against Ames, Fircrest and Ames engaged in settlement discussions. Special counsel for Fircrest, P. Stephen DiJulio, drafted a settlement agreement (titled "joint statement") intended to resolve the conflict. Ames's attorney, David Murdach, proposed modifying the agreement to prohibit release of the investigation records. DiJulio refused to make this change. Ames signed the agreement on May 22, 1990.

The agreement (joint statement) recited the violations of local and state laws uncovered during the investigation: im-

proper recordkeeping, evidence handling, and property management. It also stated there was no evidence of criminal intent. Ames agreed to improve procedures, and both parties agreed not to retaliate against each other or persons involved in the investigation. Fircrest agreed not to file criminal charges. Ames accepted responsibility for the mismanagement, and Fircrest recognized his record of service. Although Ames was suspended without pay for 30 days, he received credit for the time he was on leave during the investigation and so did not miss any additional days. He also forfeited a 1990 performance pay adjustment.

The agreement also provided that Fircrest and Ames would issue the press release attached to the agreement. The press release summarized the agreement between Ames and Fircrest and revealed no details of the investigation.

Morning News Tribune reporter Jill Leovy asked both Morrison and Ames for more details on the investigation. Morrison began preparing a notebook of selected investigation records, with some names obscured, for release to the press. Ames did not know Morrison was doing this.

On June 11, 1990, Leovy filed a written request for disclosure of the "Fircrest P.D. internal investigation". Morrison released "expurgated" case summaries and "related" material. The entire investigation record was not then released.[1] At the time of disclosure, Morrison indicated he had blotted out some names to protect confidentiality.

Morrison gave Leovy a "case summary" and a "case summary addendum" that detailed particular instances of misconduct attributed to Ames. Morrison apparently also released other "related" material. The record before this court does not contain this material.

On June 13, 1990, Leovy's story appeared in the Morning News Tribune. It named Ames as responsible for specific instances of misconduct. Although investigators believed

---

[1]Fircrest later made the entire investigative file available to the public. It deleted confidential material and added a cover letter cautioning the reader that the investigation records do not constitute the findings of the City of Fircrest.

Ames had committed the specific instances of misconduct, Fircrest apparently made no final or formal determination of responsibility or guilt. According to Ames, Fircrest never proved the allegations mentioned in the article.

On October 19, 1990, Ames filed a complaint against Fircrest and Morrison alleging four causes of action related to the release of information: deprivation of civil rights, "wrongful action", breach of contract, and defamation. The defendants moved for summary judgment of dismissal.

The trial court decided that the public disclosure act, RCW 42.17, required release of the documents and that the investigative records exemption was not applicable. It therefore granted Fircrest's motion for summary judgment. Ames sought review in the State Supreme Court. The Supreme Court transferred the cause to this court.

## STANDARD OF REVIEW

When reviewing an order of summary judgment, we perform the same inquiry as the trial court. *Simpson Tacoma Kraft Co. v. Department of Ecology*, 119 Wn.2d 640, 646, 835 P.2d 1030 (1992). The trial court may not replace the jury by weighing facts or deciding factual issues. *Babcock v. State*, 116 Wn.2d 596, 598-99, 809 P.2d 143 (1991); *Hemenway v. Miller*, 116 Wn.2d 725, 731, 807 P.2d 863 (1991). It must consider all of the facts and reasonable inferences from them in the light most favorable to the nonmoving party and grant summary judgment only if reasonable persons could reach but one conclusion. *Simpson Tacoma Kraft Co.*, 119 Wn.2d at 646; *Eriks v. Denver*, 118 Wn.2d 451, 456, 824 P.2d 1207 (1992). The moving party is entitled to summary judgment only if the submissions to the court "show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." CR 56(c).

A material fact is a fact upon which the outcome of the action depends. *Eriks v. Denver*, 118 Wn.2d at 456. "[T]he moving party bears the initial burden of showing the absence of an issue of material fact." *Young v. Key Pharmaceuticals,*

*Inc.*, 112 Wn.2d 216, 225, 770 P.2d 182 (1989). If a defendant movant meets this burden, the plaintiff must respond by making a prima facie showing of the essential elements of its case. *Young*, 112 Wn.2d at 225-26. The plaintiff cannot rely on allegations in the pleadings or assertions, but must present competent evidence by affidavit or otherwise. *Young*, 112 Wn.2d at 225-27. If the plaintiff fails to make such a showing, there is no genuine issue of fact as to the essential element in question and the trial court should grant the defendant's motion for summary judgment. 112 Wn.2d at 225. Absent proof of an essential element of the plaintiff's case, all other facts are immaterial. *Young*, 112 Wn.2d at 225.

### PUBLIC DISCLOSURE ACT

Ames premises all four of his causes of action on the theory that the defendants acted wrongfully in releasing the investigative file to the Morning News Tribune. The parties agree that if the public disclosure act *required* Fircrest to release the records, the release was not wrongful, and the trial court properly granted summary judgment. For purposes of this appeal, we assume, without deciding, that Fircrest's *voluntary* release of the records would have violated the "joint statement" and defamed Ames.[2]

██ The public disclosure act, RCW 42.17, "is a strongly worded mandate for broad disclosure of public records."[3] *Spokane Police Guild v. Liquor Control Bd.*, 112 Wn.2d 30,

---

[2]After Ames filed suit, the Legislature enacted RCW 42.17.258 (Laws of 1992, ch. 139, § 11, p. 571):

"No public agency, public official, public employee, or custodian shall be liable, nor shall a cause of action exist, for any loss or damage based upon the release of a public record if the public agency, public official, public employee, or custodian acted in good faith in attempting to comply with the provisions of this chapter."

[3]"[M]indful of the right of individuals to privacy and of the desirability of the efficient administration of government, full access to information concerning the conduct of government on every level must be assured as a fundamental and necessary precondition to the sound governance of a free society." RCW 42.17-.010(11).

33, 769 P.2d 283 (1989). The courts are to construe it liberally to promote full access to public records. RCW 42.17-.010(11). When reviewing agency action,

> [c]ourts shall take into account the policy of this chapter that free and open examination of public records is in the public interest, even though such examination may cause inconvenience or embarrassment to public officials or others.

RCW 42.17.340(3). Conversely, we construe statutory exemptions from disclosure narrowly. *Dawson v. Daly*, 120 Wn.2d 782, 789, 845 P.2d 995 (1993).[4]

Under the act, "[e]ach agency . . . shall make available for public inspection and copying all public records" unless disclosure of the record is specifically exempted or prohibited. RCW 42.17.260(1). "Agency" includes cities and towns and departments thereof. RCW 42.17.020(1). The Legislature defined "public record" broadly, RCW 42.17.020(27), and the parties here do not dispute that the records in question were public records.

Nonetheless, Ames argues that the investigation records were exempt from required disclosure under RCW 42.17-.310(1)(d), which exempts

> [s]pecific intelligence information and specific investigative records compiled by investigative, law enforcement, and penology agencies, . . . the nondisclosure of which is essential to effective law enforcement or for the protection of any person's right to privacy.

Ames does not make a privacy claim, arguing only that nondisclosure was essential to effective law enforcement. The defendants argue that the exemption does not apply.

---

[4]The Legislature has now codified this principle, and added strong language describing the purpose of the act, at RCW 42.17.251 (Laws of 1992, ch. 139, § 2, p. 564):

"The people of this state do not yield their sovereignty to the agencies that serve them. The people, in delegating authority, do not give their public servants the right to decide what is good for the people to know and what is not good for them to know. The people insist on remaining informed so that they may maintain control over the instruments that they have created. The public records subdivision of this chapter shall be liberally construed and its exemptions narrowly construed to promote this public policy."

The statute contemplates that court review of a request for disclosure will occur before the agency releases the record. Either a party denied disclosure or a third party seeking to prevent disclosure may seek a court hearing.

A party seeking disclosure may initiate a superior court action if an agency refuses to release records. RCW 42.17-.340(1). Judicial review of agency actions under the disclosure act is de novo. RCW 42.17.340(3); *Spokane Police Guild*, 112 Wn.2d at 34. The burden is then on the responsible agency to prove the applicability of an exemption. RCW 42.17.340(1); *Spokane Police Guild*, 112 Wn.2d at 34. If the agency loses, it is liable for all costs, including reasonable attorney fees, of the party seeking disclosure. RCW 42.17-.340(4). The trial court also may impose up to $100 a day as a penalty for an agency's failure to disclose. RCW 42.17-.340(4).[5]

A third party may move for an injunction to prevent an agency from disclosing a specific public record. RCW 42.17-.330;[6] *Spokane Police Guild*, 112 Wn.2d at 34-35. The party seeking to prevent disclosure bears the burden of proof, and judicial review of the agency decision is de novo. *Spokane Police Guild*, 112 Wn.2d at 35.

In either case, if the trial court bases its decision solely upon affidavits and documents without testimony,[7] appellate review is de novo. *Dawson*, 120 Wn.2d at 788; *Brouillet v. Cowles Pub'g Co.*, 114 Wn.2d 788, 793, 791 P.2d 526 (1990); *Spokane Police Guild*, 112 Wn.2d at 35-36; *In re Rosier*, 105 Wn.2d 606, 616, 717 P.2d 1353 (1986). An appellate court can then decide both issues of fact and law. Although reviewed de novo, a decision based on affidavits is a decision on the

---

[5]When Fircrest released the records, the maximum penalty was $25 per day. The Legislature increased the potential penalty in 1992 (Laws of 1992, ch. 139, § 8, p. 570).

[6]A 1992 amendment, *inter alia*, limits the categories of persons entitled to such injunctive relief (Laws of 1992, ch. 139, § 7, p. 570).

[7]A hearing based solely on affidavits is now explicitly authorized by the act. RCW 42.17.340(3) (Laws of 1992, ch. 139, § 8, p. 570).

merits and is ordinarily not treated as a summary judgment motion on appeal. *Brouillet*, 114 Wn.2d at 793-94.

██ The procedural posture of this case differs from both of the schemes described above. We are not prospectively determining whether an agency must release information; Fircrest has already released the challenged records. Here, the parties seek, as part of a broader action for damages, a determination of whether Fircrest *could have* successfully resisted the Tribune's past request for disclosure. As in the situations involving a prerelease judicial hearing, and based on the clear policy of the act,[8] we hold that the party claiming an exemption from disclosure has the burden to establish that the exemption applies. Ames must demonstrate that RCW 42.17.310(1)(d) exempts or partially exempts the public records here from disclosure.

Here, Fircrest and Morrison raised the public disclosure act defense in their motion for summary judgment. Ames responded by claiming the investigative records exemption. Ames's exemption claim required the trial court to place itself in the position of a trial court hearing a prerelease motion by a third party to enjoin Fircrest's release of the documents. Ames claims the exemption and, thus, bears the burden of proving the exemption.

Placing the burden on Ames to prove the exemption is also consistent with his burdens as a nonmovant responding to summary judgment and as a plaintiff. Under *Young*, Fircrest and Morrison had the initial burden of showing the absence of any material fact. *See Young*, 112 Wn.2d at 225. They did so by correctly arguing that the public disclosure act required Fircrest to disclose all public records not specifically exempted. RCW 42.17.260(1). If the law required Fircrest to release the challenged records, then Ames's lawsuit for wrongful disclosure must fail, and defendants were entitled to summary judgment of dismissal.

In response to the summary judgment motion, Ames, as the nonmoving plaintiff, had the burden of making a prima

---

[8]*See Seattle Fire Fighters Union, Local 27 v. Hollister*, 48 Wn. App. 129, 137 n.3, 737 P.2d 1302, *review denied*, 108 Wn.2d 1033 (1987).

facie showing that RCW 42.17.310(1)(d), the investigative records exemption to the public disclosure act, was available to Fircrest so that the act did not require Fircrest to release the records. *See Young*, 112 Wn.2d at 225. Absent this showing, all other issues of fact were immaterial. *See Young*, 112 Wn.2d at 225.

Ames made a sufficient showing to establish the first two elements of the investigative records exemption: the records here were (1) specific investigative records, (2) compiled by a law enforcement agency. *See* RCW 42.17.310(1)(d). Fircrest and Morrison, citing to *Columbian Pub'g Co. v. Vancouver*, 36 Wn. App. 25, 671 P.2d 280 (1983), argue that Fircrest's investigation of Ames was administrative, not criminal; thus, the records do not fall within the exemption. We are not persuaded. Fircrest's investigation was at least in part a criminal investigation. In addition, records of an investigation of a law enforcement officer by a law enforcement agency may be partially exempt even if the investigation is not a "law enforcement" investigation with the possibility of criminal sanction. *Brouillet*, 114 Wn.2d at 797; *see Cowles Pub'g Co. v. State Patrol*, 109 Wn.2d 712, 715, 730, 748 P.2d 597 (1988).

However, Ames fails in his effort to demonstrate the third element of RCW 42.17.310(1)(d) — that nondisclosure was essential to effective law enforcement. Ames argues that *Cowles Pub'g Co.* controls this case. In *Cowles,* a newspaper publisher sought from several law enforcement agencies the names of officers who were in violation of agency rules. 109 Wn.2d at 713-14. The agencies in each case conducted routine internal investigations to determine the validity of citizen or department complaints against their officers. 109 Wn.2d at 715. The law enforcement agencies were willing to release the facts of the complaints and investigations, but were unwilling to reveal the identities of the officers, the complaining witnesses, or of other witnesses. 109 Wn.2d at 714. Following a 2-day hearing, the trial court found that compelled disclosure of the names would hinder the ability of the law enforcement agencies to investigate alleged misconduct because without confidentiality some citizens and

officers would refuse to file complaints or to provide evidence. 109 Wn.2d at 715-18. The trial court also found that disclosure of the names of the charged officers would seriously affect the morale of the agency. 109 Wn.2d at 718. Consequently, the trial court concluded that the names were exempt from disclosure. 109 Wn.2d at 716. The Supreme Court affirmed. 109 Wn.2d at 733, 734.

■ It is clear from *Cowles Pub'g Co.* that (1) whether nondisclosure is essential to effective law enforcement, and (2) the determination of any specific information that must remain confidential are issues of fact, not of law. The plurality opinion in *Cowles Pub'g Co.* considered the extensive evidence of the operations and techniques of the internal investigation divisions and of the agencies involved and the trial court's detailed findings. 109 Wn.2d at 715-18, 729-30. Based on that record, the plurality found that the agencies "in this case" had established that nondisclosure of the names of persons in "these particular records" was necessary for effective law enforcement. 109 Wn.2d at 728, 729. The plurality holding in *Cowles* is case specific and does not establish a broad principle that all information in the records of any investigation characterized as an internal investigation is automatically exempt. The plurality noted that the exemption "is conditional upon there being a showing that disclosure would make law enforcement ineffective." 109 Wn.2d at 729. The plurality continued:

> Here, the law enforcement agencies have proven that "countervailing interest" and the trial court has so found. It is a factual verity on appeal.

109 Wn.2d at 729. Two concurring Justices reluctantly voted with the plurality to affirm because they could not substitute their judgment for that of the trial court in resolving the factual issue of whether nondisclosure was essential to effective law enforcement. 109 Wn.2d at 733-34 (Andersen, J., concurring in the result).[9]

---

[9]Later cases have analyzed this issue without deference to the trial court under a de novo standard because the record in those cases consisted of affi-

Here, Ames had the burden, both as the party claiming the exemption from disclosure and as the responding non-movant at summary judgment, to present evidence sufficient to establish a prima facie case that nondisclosure was essential to effective law enforcement. We have examined the record in the light most favorable to Ames and find that he failed to meet this burden.

■ We note that even in *Cowles Pub'g Co.* the court found an exemption only for the names contained in the records, not for the records themselves. 109 Wn.2d at 733. Ames's identity as the focus of the investigation was public before Fircrest released the records. Fircrest placed him on administrative leave during the investigation headed by a replacement chief of police. The agreed-upon press release disclosed that Ames accepted responsibility for the mismanagement of the police department. Given the facts of this case, Ames could not have remained anonymous even had his name not been disclosed in conjunction with Fircrest's disclosure of the balance of the records.

Furthermore, because Ames's involvement was well known, revealing his name would not hinder future investigations, as was the case in *Cowles Pub'g Co.* Unlike *Cowles Pub'g Co.*, this was not a routine investigation conducted by an established internal investigation division; it was a unique inquiry aimed at the head of the department. Revealing Ames's name would not prevent the use of established techniques in the future, as in *Cowles Pub'g Co.* Nor would it prevent witnesses or complainants from coming forward in the future. Under these circumstances, Ames's name was not exempt from disclosure. *See Tacoma News, Inc. v. Tacoma-Pierce Cy. Health Dep't*, 55 Wn. App. 515, 523, 778 P.2d 1066 (1989), *review denied*, 113 Wn.2d 1037 (1990).

---

davits and documents. *See, e.g., Dawson*, 120 Wn.2d at 788, 792-93; *Brouillet*, 114 Wn.2d at 793, 795-97; *Spokane Police Guild*, 112 Wn.2d at 35-36, 37. In *Spokane Police Guild*, the court specifically noted that the trial court had heard no testimony and entered no finding that nondisclosure was essential, thus distinguishing the case from *Cowles Pub'g Co.*, 112 Wn.2d at 37.

At summary judgment, Ames failed to establish an essential element of his case, that nondisclosure of the records was essential to effective law enforcement. Fircrest and Morrison were entitled to judgment as a matter of law.

Affirmed.

MORGAN, J., and PETERSON, J. Pro Tem., concur.