FILED
COURT OF APPEALS
DIVISION II

2015 FEB 24 AM 9: 24

STATE OF WASHINGTON

NO. 45450-5-II

DEPUTY

**IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON**

**DIVISION II**

| | |
|---|---|
| CITY OF FIFE, a Washington municipal corporation, | |
| Petitioner, | PUBLISHED OPINION |
| v. | |
| RUSSELL P. HICKS, | |
| Respondent. | |

BJORGEN, J. — On discretionary review, the city of Fife challenges the superior court's partial summary judgment order requiring it to provide Fife police officer Russell Hicks with unredacted copies of requested public records. The records concerned an investigation into complaints Hicks and another officer made against certain high-ranking Fife Police Department officials. The City contends that the superior court erred in ordering it to disclose certain information revealing the identities of witnesses and accused officers, arguing that the redacted information falls under exemptions in the Public Records Act (PRA), chapter 42.56 RCW, for specific investigative information compiled by law enforcement agencies and personal information in files maintained for public employees. The City further argues that the superior court erred in ruling that the City violated the PRA by redacting Hicks's own identifying information and by not providing the requested materials to Hicks until ordered to do so following a related, unsuccessful declaratory judgment action by the City. Because the City failed to raise a genuine issue of material fact as to whether the claimed exemptions apply, we affirm.

FACTS

In March 2011 Hicks and another Fife police officer submitted a whistleblower complaint pursuant to chapter 42.41 RCW to Fife City Manager Dave Zabell. The complaint alleged that certain high-ranking officials in the Fife Police Department had engaged in various types of misconduct; including racial discrimination in awarding extra compensation to bilingual officers, retaliation against officers who complained about the alleged discrimination, misappropriation of public funds to provide bilingual pay to an officer who was not actually bilingual, gender discrimination and harassment, an improper romantic relationship in the workplace and related cover-up, and inappropriate relationships with young adult offenders.

The City's attorney retained an outside entity, The Prothman Company, to investigate the allegations. Prothman's report of its investigation concluded that all the allegations were either not sustained, meaning "[t]here [was] insufficient evidence to prove or disprove the allegation," or unfounded, meaning "[t]he allegation was false or not factual." Clerk's Papers (CP) at 372.

The City issued a press release regarding the Prothman report, quoting Zabell's statements that Prothman had conducted a "thorough" investigation in a diligent and professional manner and that Zabell was confident that the investigation had "g[otten] to the truth" of the allegations. CP at 181-82.

Hicks then submitted a public records request to the City, requesting the following records related to his whistleblower complaint and the Prothman investigation:

2

1. All final reports made as a result of any investigations into the 2011 Whistleblower Complaint.
2. All audio recordings and accompanying transcripts from interviews of the [accused officials and certain named witnesses] made during the investigation of the 2011 Whistleblower Complaint. . . .
3. All documents, emails, audio recordings, video, and electronic messages that were relied on in conducting the investigation.
4. All documents provided to any media regarding the 2011 Whistleblower Complaint, its investigation, and findings arrived at in response to that Complaint.

CP at 178. In response, the next day the City informed Hicks in writing that, "due to the scope of his request," it would provide the responsive records in installments. CP at 36-37. The City released the first installment to Hicks on May 30, 2012, but redacted from the records provided all names and identifying information of witnesses, the accused officers, and the complaining parties and those parties' attorneys. The City released subsequent installments approximately every three weeks for the next four months.

Six days before releasing the first installment, the City sued Hicks for declaratory and injunctive relief in superior court. The complaint alleged that the "audio recordings and transcripts of witness interviews, as well as pre-final report interviewer prepared/involved documents prepared by Prothman [sic] . . . do not constitute public records," or, in the alternative, (2) were exempt from disclosure pursuant to RCW 42.56.290, the PRA exception for attorney work product and communications protected by the attorney-client privilege. The complaint asked the court to enjoin disclosure and to declare that the materials were not public records or were exempt from disclosure. The complaint further requested that the court, should it rule that the materials were nonexempt public records, determine "the extent to which the names and identifying information of interviewees, witnesses, complainants, and the persons accused can be redacted." CP at 5.

After the City provided the first installment, Hicks filed an answer and counterclaim alleging that the City violated the PRA by failing to provide all responsive documents and by filing suit against Hicks. The City moved for an in-camera review of the materials and a protective order, and Hicks moved to compel production of all records responsive to his request.

The superior court granted Hicks's motion to compel in part, ordering the City to provide within 20 days the materials described in the City's complaint, specifically "all audio and written interview files and investigator-created documents used for production of" the Prothman report. CP at 34-35. The court ruled that the audio recordings qualified as public records and were not protected from disclosure by the work product rule or the attorney-client privilege. The court expressly declined to compel production of other materials or to rule on the propriety of the City's redactions.

The City provided Hicks with the records identified in the order within the time specified. As with the previous installments, however, the City redacted any information specifically identifying witnesses, accused officers, and the complaining parties, including Hicks and his attorneys. The City also modified the audio recordings so that those interviewed could not be identified by their voices. Upon providing the final installment, the City stated that it considered Hicks's request closed.

The City then moved to voluntarily dismiss its declaratory judgment action and for summary judgment on Hicks's counterclaim. The City maintained that, in light of the court's ruling on Hicks's motion to compel, no issues remained before the court concerning the City's complaint for declaratory and injunctive relief, and that it could voluntarily dismiss the complaint as a matter of right. As to the counterclaim, the City argued that it met the time limits

imposed by the PRA, that the redactions were proper, and that it had complied with the PRA as a matter of law.

Hicks moved for partial summary judgment on his counterclaim, asking the trial court to rule that the City had violated the PRA and to order it to provide unredacted versions of all responsive records. In response, the City submitted a declaration from one of the accused officers, Assistant Chief Mark Mears, in addition to other material. Mears opined, based on his 19 years as a law enforcement official, that nondisclosure of the identities of witnesses in an internal investigation into police misconduct was essential to effective law enforcement, because witnesses would feel reluctant to cooperate if they knew that anyone could subsequently learn their identities and what they had said.

After a hearing, the superior court granted Hicks's motion for partial summary judgment, ruling that the City violated the PRA by improperly redacting information identifying the witnesses and most of the accused officers that Prothman had interviewed. The court's order permitted the City to redact only the identities of subjects of unsubstantiated allegations of sexual misconduct. The court's oral ruling found a violation of the PRA based on both the length of time the City took to disclose the records identified in the declaratory judgment action and on the City's improper redactions. The court's remarks at the hearing also suggest that it based its ruling in part on the views that (1) an agency may not redact the requestor's own name from the records requested and that (2) the City's participation in media coverage of the Prothman investigation and report undermined its claim that the redacted material was exempt from disclosure. The court reserved ruling on penalties.

Before any hearing on penalties had been scheduled, the City appealed directly to our Supreme Court, which transferred the case to our court. Concluding that the superior court's

order was not appealable as a matter of right, our court clerk converted the City's notice of appeal to a motion for discretionary review, which motion our commissioner granted.

ANALYSIS

After setting forth the standard of review, we first consider whether the superior court erred in ruling that the redacted material did not fall under the two PRA exemptions invoked by the City: the investigative records exemption and the exemption for public employees' personal information. Concluding that the superior court did not err, we then turn to the remaining issues.

I. STANDARD OF REVIEW AND GOVERNING LAW

Under the PRA, municipalities must make all public records available for public inspection or copying upon request, unless a specific exemption from disclosure applies. RCW 42.56.070(1). "[S]trong public policy" favors disclosure, and courts must construe the PRA's exemptions narrowly. *Franklin County Sheriff's Office v. Parmelee*, 175 Wn.2d 476, 479, 285 P.3d 67 (2012) (citing RCW 42.56.030), *cert. denied*, 133 S. Ct. 2037 (2013). The agency claiming the exemption bears the burden of proving that a specific exemption applies. *Prison Legal News, Inc. v. Dep't of Corrs.*, 154 Wn.2d 628, 636, 115 P.3d 316 (2005).

An agency may also ask a court to enjoin disclosure of requested records. RCW 42.56.540; *Soter v. Cowles Publ'g Co.*, 162 Wn.2d 716, 751-52, 174 P.3d 60 (2007). The court may grant the injunction if it finds that an exemption applies and disclosure would clearly not be in the public interest and would substantially and irreparably damage any person or would substantially and irreparably damage vital governmental functions. *Progressive Animal Welfare Soc'y v. Univ. of Wash.*, 125 Wn.2d 243, 257-58, 884 P.2d 592 (1994).

We review an agency's denial of the opportunity to inspect or copy public records de novo. RCW 42.56.550(3). We also review a trial court's grant of summary judgment de novo,

6

performing the same inquiry as the trial court. *Torgerson v. One Lincoln Tower, LLC*, 166 Wn.2d 510, 517, 210 P.3d 318 (2009).

> A court should grant summary judgment only if
>
> the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.

CR 56(c). A party moving for summary judgment bears the burden of demonstrating that there is no genuine issue of material fact. *Atherton Condo.-Apartment Owners Ass'n Bd. of Dirs. v. Blume Dev. Co.*, 115 Wn.2d 506, 516, 799 P.2d 250 (1990). A material fact is one upon which the outcome of the litigation depends in whole or in part. *Atherton*, 115 Wn.2d at 516.

If the moving party satisfies this burden, the nonmoving party must present evidence demonstrating that material facts remain in dispute. *Atherton*, 115 Wn.2d at 516. If the nonmoving party fails in this, summary judgment is proper. *Vallandigham v. Clover Park Sch. Dist. No. 400*, 154 Wn.2d 16, 26, 109 P.3d 805 (2005). In conducting this inquiry, the court must consider all facts, and any reasonable inferences that follow from them, in the light most favorable to the nonmoving party. *Vallandigham*, 154 Wn.2d at 26.

## II. THE PRA EXEMPTION FOR SPECIFIC INVESTIGATIVE RECORDS DOES NOT APPLY TO THE REDACTED MATERIAL

The City first contends that it properly redacted information identifying witnesses and accused officers under RCW 42.56.240(1), which exempts from inspection or copying

> specific investigative records compiled by investigative, law enforcement, and penology agencies . . . the nondisclosure of which is essential to effective law enforcement or for the protection of any person's right to privacy.

Br. of Petitioner at 12. To successfully invoke the investigative records exemption, which aims "to protect the integrity of law enforcement investigations," an agency must establish that the requested record (1) is investigative in nature, (2) was compiled by an investigative, law

enforcement, or penology agency, and is either (3) essential to law enforcement or (4) essential to the protection of a person's right to privacy. *Koenig v. Thurston County*, 175 Wn.2d 837, 843, 287 P.3d 523 (2012). The parties dispute all of these elements, and we consider each in turn.

A.     The Records Are Specific Investigative Records

Hicks contends that the redacted records do not qualify as specific investigative records, because the Prothman investigation primarily concerned ordinary personnel issues, not crimes. We disagree.

Our Supreme Court has held that records "compiled as a result of a specific investigation focusing with special intensity upon a particular party" qualify as "specific investigative records" under RCW 42.56.240(1). *Koenig*, 175 Wn.2d at 843 (internal quotation marks omitted). Specifically, an investigation "designed to ferret out criminal activity or to shed light on some other allegation of malfeasance" falls within the scope of the exemption. *Columbian Publ'g Co. v. City of Vancouver*, 36 Wn. App. 25, 31, 671 P.2d 280 (1983).

The allegations at issue here included inappropriate relationships with offenders, including intimate touching, misappropriation of public funds, and employment discrimination based on sex and ethnicity. Hicks made these allegations against particular parties. Thus, the Prothman investigation "focus[ed] with special intensity upon a particular party," *Koenig*, 175 Wn.2d at 843, and aimed to "shed light on some . . . allegation of malfeasance," *Columbian Publishing*, 36 Wn. App. at 31. Under these principles, the records qualify as specific investigative records.

Hicks attempts to escape this conclusion based on two opinions of our court, *Columbian Publishing*, 36 Wn. App. 25, and *Ames v. City of Fircrest*, 71 Wn. App. 284, 857 P.3d 1083 (1993). Neither authority supports Hicks's argument.

*Columbian Publishing* involved records related to a city manager's investigation into complaints from police officers that their police chief treated them with disrespect, lacked communication and management skills, and had "alienated other law enforcement agencies." 36 Wn. App. at 27. We held that the records did not qualify as specific investigative records because the allegations involved "purely a personnel matter." 36 Wn. App. at 31. In contrast, the allegations here went well beyond personnel matters, reaching into claims of malfeasance or violations of law. *Columbian Publishing*, thus, has little bearing on the resolution of this case.

*Ames* involved records related to an internal investigation into "alleged improprieties" by three high-ranking police officers. 71 Wn. App. at 286-87. The court held that the investigative records exemption did not apply, but not for the reason Hicks asserts. On the contrary, the court expressly noted that "Ames made a sufficient showing to establish" that the records qualified as "specific investigative records." 71 Wn. App. at 294.

More to the point, a number of other cases have treated materials concerning internal investigations into police misconduct as investigative records under the PRA. *E.g., Bainbridge Island Police Guild v. City of Puyallup*, 172 Wn.2d 398, 419, 259 P.3d 190 (2011); *Cowles Publ'g Co. v. State Patrol*, 109 Wn.2d 712, 729, 748 P.2d 597 (1988) (involving the PRA's predecessor statute). In addition, after the parties submitted their briefing in this case, our Supreme Court clarified that records of internal police investigations qualify as specific investigative records under the PRA, even though "[t]he main purpose of the internal investigation is to reach an internal disciplinary remedy for proved misconduct." *Sargent v. Seattle Police Dep't*, 179 Wn.2d 376, 392-93, 314 P.3d 1093 (2013).

The Prothman investigation focused with special intensity on allegations of malfeasance by particular parties. Under these precedents, the materials qualify as specific investigative records.

B.     The Records Were Compiled by a Law Enforcement Agency

Hicks next contends that the specific investigative records exemption does not apply to the Prothman materials because a law enforcement agency did not "compile" them. Br. of Resp't at 20-21. Hicks bases this argument chiefly on Zabell's declaration that an outside attorney retained by the City's insurer hired Prothman, and that "[n]either [Zabell] nor any of [his] staff reviewed, evaluated, received or used any part of the" Prothman materials other than the final report. CP at 31-32.

The record establishes that Zabell acted in his capacity as supervisor of the police department in initiating the investigation. Zabell sent letters to members of the police department stating, for example, that "the City has decided to conduct an internal investigation" into Hicks's allegations, that "[a]ny violation of the directives contained in this memo will be considered insubordination," and that "[t]he City has retained [Prothman's investigator], a former police chief for another City, to conduct the investigation and report back to [Zabell]." CP at 463-66. These circumstances establish that Prothman acted as Zabell's or the City's agent or subagent with actual authority to conduct the investigation. RESTATEMENT (THIRD) OF AGENCY §§ 2.01, 3.15 (2005). Thus, Prothman's creation and retention of the materials is attributable to Zabell, acting in his capacity as supervisor of the police department. *See Dickinson v. Edwards*, 105 Wn.2d 457, 466, 716 P.2d 814 (1986); *Busk v. Hoard*, 65 Wn.2d 126, 134-35, 396 P.2d 171 (1964).

10

This conclusion is directly buttressed by *City of Tacoma v. Tacoma News, Inc.*, 65 Wn. App. 140, 144 & n.3, 827 P.2d 1094 (1992), which held that under the predecessor to the PRA "[t]he disputed documents [were] specific investigative records compiled by a law enforcement agency" because "it [was] apparent that the letters were received and retained in connection with the investigation." The court specified further that "[t]he location in which the letters were physically filed or retained is one factor to look at, but is not by itself dispositive." *Tacoma News*, 65 Wn. App. at 144 n.3. As in *Tacoma News*, the record here makes clear that the city manager, or a party whose conduct was attributable to him, acting as supervisor of the police department, "received and retained" the Prothman materials, "in connection with the investigation." 65 Wn. App. at 144 n.3.

The fact that the City's agent or subagent conducted the investigation and compiled the records rather than city officials is immaterial. RESTATEMENT (THIRD) OF AGENCY § 3.15, at 289-90 cmt. d. (2005). The fact that the records were not physically located in the City's files is not dispositive. *Tacoma News*, 65 Wn. App. at 144 & n.3. The records were compiled by a law enforcement agency for purposes of the investigative records exemption.

C.    The City Failed To Raise a Genuine Issue of Material Fact as to Whether Nondisclosure of the Redacted Material Is Essential to Effective Law Enforcement

The City contends that nondisclosure of the identifying information redacted from the Prothman materials was essential to effective law enforcement. The City argues that it submitted "uncontroverted evidence," in the form of a declaration from Assistant Chief Mears, one of the accused officers, that "'[i]t is essential to law enforcement's ability to conduct thorough and complete investigations that complainants, witnesses, and interviewees can rely on being able to speak freely . . . with the knowledge that their identities will be protected.'" Br. of Petitioner at 15, 18 (quoting CP at 286).

11

The City bases its argument on two precedents, *Cowles Publishing*, 109 Wn.2d 712, and *Tacoma News*, 55 Wn. App. 515. Neither case, however, supports the City's position.

To begin with, only four justices signed the lead opinion in *Cowles*, 109 Wn.2d 712, 733, so its language alone has little precedential value. *In re Pers. Restraint of Isadore*, 151 Wn.2d 294, 302, 88 P.3d 390 (2004) ("A plurality opinion has limited precedential value and is not binding on the courts."). Further, if there is no majority agreement as to the rationale for a decision, "'the holding of the court is the position taken by those concurring on the narrowest grounds.'" *W.R. Grace & Co. v. Dep't of Revenue*, 137 Wn.2d 580, 593, 973 P.2d 1011 (1999) (quoting *Davidson v. Hensen*, 135 Wn.2d 112, 128, 954 P.2d 1327 (1998)).

In *Cowles*, the trial court heard testimony specifically addressing the facts of that case from numerous law enforcement and expert witnesses and found, based on that testimony, that nondisclosure of the identities of officers subject to the internal police investigations at issue was essential to effective law enforcement. *Cowles*, 109 Wn.2d at 715-18. The plurality agreed. *Cowles*, 109 Wn.2d at 729. Justice Anderson, concurring in the result, expressly disagreed with the plurality's view of the law, but felt constrained by the trial court's factual findings. *Cowles*, 109 Wn.2d at 733-34. In fact Justice Anderson noted that, although "the public disclosure act opens the public record doors much wider to the press and the public than the majority of the court is willing to concede[, i]n the case at bench . . . I am constrained by the trial court's findings." *Cowles*, 109 Wn.2d at 733-34.

Thus, *Cowles* serves as binding precedent only for the proposition that, where a trial court finds, based on substantial evidence, that nondisclosure is essential to effective law enforcement, an appellate court may not substitute its own view for that of the trial court. *See Ames*, 71 Wn. App. at 294-95. Indeed, shortly after it was decided, our Supreme Court distinguished *Cowles*

and declined to hold that nondisclosure of a liquor control board's investigation into a bachelor party held at the Spokane Police Guild was essential to effective law enforcement:

> Unlike *Cowles Pub'g*, which was recently before us, no testimony was taken at the trial court level in this case and there is no finding by the trial court that nondisclosure is essential to effective law enforcement.

*Spokane Police Guild v. Liquor Control Bd.*, 112 Wn.2d 30, 37, 769 P.2d 283 (1989). Thus, *Cowles* does not establish that the trial court here erred in declining to rule, despite Mears's declaration, that nondisclosure was essential to effective law enforcement.

*Tacoma News* helps the City even less. First, the opinion relies heavily in its analysis on the reasoning of the plurality opinion in *Cowles*, without addressing that opinion's lack of precedential value. *Tacoma News*, 55 Wn. App. at 521-22. Furthermore, the court expressly limited its holding to the facts of that case: "We hold that the legitimate concern for protecting confidential sources of information makes nondisclosure of the Health Department's sources *in this case* essential to effective law enforcement." *Tacoma News*, 55 Wn. App. at 523 (emphasis added.)

Most importantly, the *Tacoma News* court expressly *rejected* the proposition that a generalized fear that disclosure of witness names will chill cooperation with investigations, standing alone, establishes that nondisclosure of identifying information is essential to effective law enforcement:

> The Health Department's affidavits indicate that the witnesses in the investigation provided information voluntarily, but would not have done so without assurances of confidentiality. David Potter, president of the Pierce County Paramedics Association, opined in his affidavit that "the identifying details and names of the people who are involved in this case as complainants and witnesses should not be made public" due to fears of "ostracism or retaliation." *Though such fears alone do not make nondisclosure of the information essential to effective law enforcement*, we recognize that disclosing sources in sensitive cases effectively would dilute law enforcement investigations.

*Tacoma News*, 55 Wn. App. at 522 (emphasis added). Not only does this fail to support the City's contention that the trial court here erred, it suggests that the generalized concerns expressed in Mears's declaration were insufficient to establish that nondisclosure was essential to effective law enforcement.

Our Supreme Court recently confirmed that a generalized contention that disclosure of identifying information would have a chilling effect on future witnesses is not sufficient to trigger the RCW 42.56.240(1) exemption. *Sargent*, 179 Wn.2d at 395. The *Sargent* court held that Division One of our court had erred by remanding that case to the trial court so that the Seattle Police Department could present more evidence that nondisclosure of witness identities was essential to effective law enforcement:

> At the show cause hearing, the [Seattle Police Department] clearly understood that it needed to come forward with specific evidence of chilled witnesses or other evidence of impeded law enforcement. . . . But, as both the trial court and Court of Appeals recognized, the [Seattle Police Department] made no actual showing that redaction of witness names was essential to effective law enforcement *in this particular case. A general contention of chilling future witnesses is not enough to exempt disclosure.* A remand to give the [Seattle Police Department] another opportunity to make the showing required to trigger the exemption is unwarranted.

*Sargent*, 179 Wn.2d at 395 (emphasis added).

Mears's declaration says nothing specific about the facts of the case. It asserts only that disclosure of witness identities could make conducting various types of investigations more difficult in the future because people would be less likely to voluntarily cooperate or come forward with information. This is just the kind of generalized contention of chilling future witnesses that the *Sargent* court held insufficient. *Sargent*, 179 Wn.2d at 395.

Once Hicks moved for summary judgment and established that the Prothman materials were presumptively subject to disclosure, the City, as the nonmoving party, bore the burden of coming forward with some evidence establishing a factual dispute as to whether nondisclosure

14

was essential to effective law enforcement. *Atherton*, 115 Wn.2d at 516; *see also Ames*, 71 Wn. App. at 296 (noting that "Ames had the burden, both as the party claiming the exemption from disclosure and as the responding nonmovant at summary judgment, to present evidence sufficient to establish a prima facie case that nondisclosure was essential to effective law enforcement"). The only evidence the City presented consisted of a declaration from Mears, one of the accused officers, alleging matters insufficient as a matter of law to establish the necessary proposition. Therefore, the trial court did not err in its view that the effective law enforcement prong of the investigative records exemption did not apply.

D.    The City Failed To Raise a Genuine Issue of Material Fact as to Whether Nondisclosure of the Accused Officers' Identifying Information Is Essential To Protect a Person's Privacy

As noted, RCW 42.56.240(1) exempts specific investigative records compiled by law enforcement from disclosure if nondisclosure is "essential to effective law enforcement or for the protection of any person's right to privacy." Having held the material at issue is not essential to effective law enforcement, we turn to the remaining inquiry: whether nondisclosure is essential to protection of the right to privacy. The City argues only that nondisclosure of the accused officers' identifying information is necessary to protect their privacy under this exemption.

The PRA defines an invasion of the right to privacy as follows:

A person's "right to privacy," "right of privacy," "privacy," or "personal privacy," as these terms are used in this chapter, is invaded or violated only if disclosure of information about the person: (1) Would be highly offensive to a reasonable person, and (2) is not of legitimate concern to the public.

RCW 42.56.050. Because we hold that the identities of the accused officers are of legitimate concern to the public, we do not decide whether their disclosure would be highly offensive to a reasonable person.

15

The City maintains that the public has no legitimate concern with the identities of officials subject to unsubstantiated allegations, regardless of the nature of the accusation. In *Bellevue John Does 1-11 v. Bellevue School District No. 405*, 164 Wn.2d 199, 221, 189 P.3d 139 (2008), the court held that "[w]hen an allegation is unsubstantiated, the teacher's identity is not a matter of legitimate public concern." The *Bainbridge Island Police Guild* court, however, characterized that holding as follows: "In *Bellevue John Does*, we held that the public has no legitimate interest in finding out the identity of someone accused of an unsubstantiated allegation of sexual misconduct." *Bainbridge Island Police Guild*, 172 Wn.2d at 415. Thus, *Bellevue John Does* does not compel the conclusion that the identities of the accused officers are exempt from disclosure.

In addition, the public arguably has much more reason to legitimately concern itself with the conduct of high-ranking police department officials than with rank-and-file officers. In *Morgan v. City of Federal Way*, 166 Wn.2d 747, 756, 213 P.3d 596 (2009), the court held that allegations of misconduct against a judge were not exempt from disclosure as being highly offensive. In reaching this conclusion, the court relied in part on the fact that "Judge Morgan also fails to demonstrate how his behavior in the workplace is not of legitimate concern to the public," noting that "the public has a substantial interest in disclosure of information related to an elected official's job performance." *Morgan*, 166 Wn.2d at 756-57. While the officials at issue here were not elected, their conduct in the performance of their official duties is of similar significance to the residents of Fife.

In holding that the privacy exemption did not apply, the *Morgan* court also noted that the allegations at issue were not entirely unsubstantiated. 166 Wn.2d at 756. Similarly, while the Prothman report found all of the allegations at issue here "not sustained" or "unfounded," the

investigation actually confirmed many of the factual assertions underlying the allegations. CP at 372-76, 382-85. For example, the report concluded that certain remarks made by one officer accused of gender discrimination were "inappropriate," but did not sustain the allegation because the inappropriate comments "were not made exclusively about one particular race or gender group." CP at 376.

The report found a number of other allegations as "not sustained," even though the events described in Hicks's complaint admittedly occurred, because witnesses attributed the alleged misconduct to mistakes or misunderstandings, and Prothman's investigator found insufficient evidence that the accused officers acted with improper motive or intent. For example, one set of allegations involved the claim that an officer who could not effectively communicate in Spanish had nonetheless received extra "bilingual pay" for Spanish language proficiency, while two other officers who were actually fluent in Spanish did not receive the extra pay. The Prothman report found the allegations not sustained because the officer accused of making the improper decisions on extra pay told the investigator that, at the time he made the decisions, he believed that the subordinate officer who received the extra pay could speak Spanish and that the other two officers could not.

Another series of allegations was based on Hicks's claim that a supervisor had improperly denied a subordinate officer the opportunity to teach a course at the Fife Police Reserve Academy and then lied to the subordinate about the reasons for the decision. The Prothman report similarly concluded that these allegations were not sustained because the supervisor told Prothman's investigator that he believed at the time that only an attorney could teach the course.

Hicks's whistleblower complaint also alleged that a certain officer had in-custody offenders brought to his office for private meetings and maintained an ongoing friendship with at least two known offenders whom the officer had met for lunch and hired to perform home repairs. The Prothman report likewise found these allegations not sustained, even though the accused officer admitted that the contacts with the offenders had occurred more or less as described, because no evidence showed that those contacts served anything other than an appropriate official purpose.

Thus, even though the Prothman report concluded that all of the allegations were either unfounded or not sustained, the investigation in fact confirmed that many of the events described had actually occurred. Those allegations, furthermore, concerned the official conduct of high-ranking police officials, inherently a matter of greater interest to the public than, for example, allegations of misconduct by rank-and-file officers.

Under these circumstances, the identities of the accused officers qualify as a matter of legitimate public concern. The trial court, therefore, did not err in declining to rule that nondisclosure was essential to protect the accused officers' privacy.

### III. THE PRA EXEMPTION FOR PERSONAL INFORMATION IN FILES MAINTAINED FOR PUBLIC EMPLOYEES DOES NOT APPLY TO THE REDACTED MATERIAL

The City also contends that nondisclosure of the accused officers' identifying information falls under the PRA exemption for "[p]ersonal information in files maintained for employees, appointees, or elected officials of any public agency to the extent that disclosure would violate their right to privacy." RCW 42.56.230(3). The right to privacy is defined in the same way for this exemption as for the exemption discussed above for specific investigative records. *See* RCW 42.56.050. As just concluded, disclosure of the identities of accused officers would not

offend their right to privacy under the investigative records exemption. Therefore, the same disclosure would not offend the same rights for purposes of the exemption in RCW 42.56.230(3).

## IV. THE CITY DID NOT SHOW ANY PRA EXEMPTION ALLOWING IT TO REDACT HICKS'S OWN IDENTIFYING INFORMATION[1]

The City supports its redaction of Hicks's own identifying information by pointing out that the PRA prohibits agencies from distinguishing among requestors, RCW 42.56.080, and argues this allows it to redact even the requestor's own name if an exemption applies. A rule prohibiting redaction of the requestor's own name, however, would not on its face require agencies to distinguish among requestors, since all requestors would be entitled to their own identifying information. The key inquiry, rather, is whether any exemption to disclosure allows the City to redact this material.

The City bears the burden of proving that a specific PRA exemption applies. *Prison Legal News*, 154 Wn.2d at 636. It has failed to show that any exemption allows it to redact Hicks's own identifying information.[2] We thus reject the City's argument that the trial court erred in requiring disclosure of Hicks's identity as the requestor.

## V. THE EFFECT OF THE CITY'S DECLARATORY JUDGMENT ACTION

The City contends that the trial court erred in ruling that it violated the PRA by not providing the Prothman materials to Hicks until ordered to do so following the City's

---

[1] Because we hold that no PRA exemption applies, we need not reach Hicks's argument that the City waived the accused officers' right to privacy by discussing the Prothman report with the media.

[2] In rejecting a claim that the PRA exemption for specific investigative records applied to an internal police investigation, the *Sargent* court appeared to consider the identity and knowledge of the requestor. *Sargent*, 179 Wn.2d at 392 (noting that "the [Seattle Police Department] refused to disclose the entire internal investigation file, even though Sargent already knew that Waters was the subject of the investigation and was seeking more than witness names").

unsuccessful declaratory judgment action.[3] Related to this is the question whether the City must pay the reasonable costs and attorney fees Hicks incurred in defending against the City's declaratory judgment action and a statutory penalty under RCW 42.56.550(4).

Public agencies are authorized by RCW 42.56.540 to bring actions to enjoin the disclosure of requested documents. The City's declaratory judgment action was of this nature and was authorized by the PRA.

RCW 42.56.550(4), however, provides that

[a]ny person who prevails against an agency in any action in the courts seeking the right to inspect or copy any public record or the right to receive a response to a public record request within a reasonable amount of time shall be awarded all costs, including reasonable attorney fees, incurred in connection with such legal action. In addition, it shall be within the discretion of the court to award such person an amount not to exceed one hundred dollars for each day that he or she was denied the right to inspect or copy said public record.

The City's suit qualified as "an action in the courts," and Hicks sought "to inspect or copy [a] public record." RCW 42.56.550(4). Further, this statute expressly authorizes the award of daily fines for each day the requestor was denied the right to inspect. Thus, proceeding under RCW 42.56.540 does not insulate the agency from responsibility for delay up to the time the declaratory judgment action is decided. Rather, it commences responsibility from the denial of the right to inspect. This statute also plainly entitles Hicks to costs and attorney fees in defending against the declaratory judgment action.

---

[3] At oral argument in our court, the City for the first time asserted that the trial court's ruling on Hicks's motion to compel in the declaratory judgment action is not properly before us because the commissioner's ruling granting review applied only to the trial court's decision concerning the City's subsequent redactions. Wash. Court of Appeals, *City of Fife v. Hicks*, No. 45450-5-II, oral argument (Sept. 3, 2014), at 30 min., 30 sec. (on file with court). However, the appeal before us is of the trial court's order on summary judgment holding that the redactions violated the PRA. Those issues are within the scope of the grant of discretionary review. Ruling Granting Review, *City of Fife v. Hicks*, No. 45450-5-II (Wash. Ct. App. March 4, 2014). The status of the ruling on the prior motion to compel therefore has no bearing on this appeal.

The City attempts to avoid this conclusion by describing its suit as a good faith attempt to determine whether the records were exempt and points out that it disclosed all responsive records within the time it had originally estimated. These matters, though, do not bear on the precise issue.

Our Supreme Court, in rejecting an argument that agencies could not initiate declaratory judgment actions under the PRA, expressly relied on the fact that, if an agency did so and lost, it would be liable for the requestor's costs and fees:

> *The Spokesman-Review* offers several policy arguments as to why it believes agencies should not be permitted to initiate review by a superior court. For example, *The Spokesman-Review* asserts that agencies will be encouraged to haul records requesters, who are unable to afford to defend themselves, into court. However, a public records requester who does not wish to engage in a court battle could simply withdraw the public records request, making the agency's action moot. In addition, the requester could move for voluntary dismissal of the action if he or she no longer seeks access to the public record. CR 41(a). Withdrawing the record request is not significantly different from deciding to no longer pursue access to the record. Thus, we perceive no chilling effect on record requesters. And the Court of Appeals noted, *if a record requester chooses to move forward and prevails, he or she would recover all costs and reasonable attorney fees* RCW 42.56.550(4).

*Soter*, 162 Wn.2d at 753 n.16 (emphasis added). The *Soter* court went on to explain that "the advantage to going to court is that the agency can obtain quick judicial review, curbing, but not eliminating, the accumulation of the per diem penalties." 162 Wn.2d at 756. *Soter* establishes that, by prosecuting an unsuccessful declaratory judgment action, the agency becomes liable for the requestor's reasonable costs and attorney fees. The City's unsuccessful declaratory judgment action entitled Hicks to costs and fees. We leave it to the trial court to determine the amount of the penalty under RCW 42.56.550(4) on remand.

## VI. ATTORNEY FEES ON APPEAL

As the prevailing party, RCW 42.56.550(4) also entitles Hicks to reasonable costs and fees incurred on appeal. *Resident Action Council v. Seattle Hous. Auth.*, 177 Wn.2d 417, 447,

21

No. 45450-5-II

327 P.3d 600 (2013). Hicks has complied with the procedural requirements of RAP 18.1(b), and we grant his request in an amount to be set by a commissioner of our court. RAP 18.1(f).

CONCLUSION

The City failed to present any evidence establishing a material, factual dispute as to whether the claimed exemptions apply to the identifying information redacted from the Prothman materials. Therefore, we affirm the trial court and award Hicks costs and reasonable attorney fees incurred on appeal.

BJORGEN, J.

We concur:

JOHANSON, C.J.

MELNICK, J.

22