# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | | |
|---|---|---|
| ANNE K. BLOCK, | ) | No. 71425-2-I |
| | ) | |
| Appellant, | ) | DIVISION ONE |
| | ) | |
| v. | ) | |
| | ) | |
| CITY OF GOLD BAR, | ) | UNPUBLISHED |
| | ) | |
| Respondent. | ) | FILED: June 22, 2015 |
| | ) | |

2015 JUN 22 AH 8: 26
COURT OF APPEALS DIV I
STATE OF WASHINGTON
FILED

Cox, J. — The Public Records Act (PRA) requires a government agency to conduct an adequate search for responsive records to a public records request. The agency must then disclose records responsive to the request and either produce such records for inspection and copying or withhold them. The agency may lawfully withhold a record only if it is exempt.[1]

---

[1] We use the words "disclose," "produce," "withheld," and "exempt" as they are used in the PRA:

1. Records are either 'disclosed' or 'not disclosed.' A record is disclosed if its existence is revealed to the requester in response to a PRA request, regardless of whether it is produced.

2. Disclosed records are either 'produced' (made available for inspection and copying) or 'withheld' (not produced). A document may be lawfully withheld if it is 'exempt' under one of the PRA's enumerated exemptions. A document not covered by one of the

In this case, Anne Block made two public records requests to the City of Gold Bar. The City produced certain records and either completely or partially withheld others, which it identified as exempt in two separate privilege logs. Block commenced this action, claiming the City violated the PRA and seeking an award of attorney fees and costs.

Because there were no genuine issues of material fact and the City was entitled to judgment as a matter of law, the trial court properly granted the City's cross-motion for summary judgment. Likewise, the court properly denied Block's motion for partial summary judgment. We affirm.

Block made two public records requests to the City that are the subjects of this action, one on December 9, 2008 and the other on February 13, 2009. In her first request, Block sought records about Karl Majerle, a former city employee who was fired for malfeasance. He threatened to sue the City, and the City settled his claim. Block requested that the City produce records relating to his discharge and threatened a lawsuit.

---

exemptions is, by contrast, 'nonexempt.' Withholding a nonexempt document is 'wrongful withholding' and violates the PRA.

3. A document is never exempt from disclosure; it can be exempt only from production. An agency withholding a document must claim a 'specific exemption,' i.e., which exemption covers the document. The claimed exemption is 'invalid' if it does not in fact cover the document.

Sanders v. State, 169 Wn.2d 827, 836, 240 P.3d 120 (2010) (citations omitted).

2

The City produced 675 pages of public records in response to this first request. The City also withheld as exempt 66 pages of records. These latter records were disclosed in a log titled "Privileged/Exemption/Redaction Log."[2] This log stated they were exempt under the PRA, as attorney-client privilege or attorney work product.

In her second request, Block sought records about how the City gathered public records in response to her first request. The City produced 75 pages of records. The City also redacted and produced 29 pages of e-mail messages, providing the headers and signatures of the documents. The City provided a second log titled "Privileged/Exemption/Redaction Log" with supporting explanations.[3] The City claimed attorney-client privilege or attorney work product under the PRA for the redacted content of these records.

Block commenced her first PRA action against the City on February 12, 2009. The City completed its production of records for both of Block's requests on February 27, 2009, while that first action was pending. Shortly before stipulating to dismissing her first action, she commenced this second PRA action against the City on February 1, 2010.

Following the City's production of records and its two exemption logs to Block on February 27, 2009, she obtained additional responsive records to the requests she made in December 2008 and February 2009. Her declaration

_____

[2] Clerk's Papers at 534-38.

[3] Id. at 539-44.

3

states that she received these documents either from other sources or from later requests for records from the City.

Block moved for partial summary judgment. She argued that the City had violated the PRA by failing to produce responsive records, by entirely withholding several records in response to her first request, and by failing to provide adequate explanations for why it withheld or redacted records in response to both her requests. She also asked the court to review in camera the redacted documents that the City produced in response to the second request to determine if they were exempt. She did not seek any in camera review in connection with her first records request.

The City's cross-motion for summary judgment followed.

The trial court reviewed in camera the records redacted in response to Block's second request, as she sought. The court determined that the redacted content was exempt under the work product or attorney-client privilege doctrines.

Thereafter, the court granted the City's cross-motion for summary judgment and denied Block's motion for partial summary judgment.

Block appeals.

## SUMMARY JUDGMENT

A threshold issue is whether the trial court properly applied CR 56 to the respective summary judgment motions of the parties in this PRA action. For the reasons we explain, we hold that it did.

In a summary judgment motion, the moving party bears the initial burden of showing the absence of a genuine issue of material fact.[4] If the moving party is a defendant and meets this initial showing, then the inquiry shifts to the nonmoving party.[5] If the nonmoving party fails to make a showing sufficient to establish the existence of a genuine issue of material fact, then the trial court should grant the motion.[6] In making this responsive showing, the nonmoving party cannot rely on the allegations made in its pleadings.[7] CR 56(e) requires that the response, "'by affidavits or as otherwise provided in [CR 56], must set forth specific facts showing that there is a genuine issue for trial.'"[8]

At that point, the court considers the evidence and all reasonable inferences therefrom in the light most favorable to the nonmoving party.[9]

Under the PRA, agencies must prove that they adequately responded to record requests:

> The PRA is a strongly worded mandate for broad disclosure of public records. Passed by popular initiative, it stands for the proposition that "full access to information concerning the conduct of government on every level must be assured as a fundamental and necessary precondition to the sound governance of a free society." Agencies are required to disclose any public record on request unless it falls within a specific, enumerated exemption. The burden is on the agency to show a withheld record falls within an

---

[4] Young v. Key Pharm., Inc., 112 Wn.2d 216, 225, 770 P.2d 182 (1989).

[5] Id.

[6] Id.

[7] See id.

[8] Id. at 225-26 (quoting CR 56(e)).

[9] Id. at 226.

exemption, and the agency is required to identify the document itself and explain how the specific exemption applies in its response to the request.[10]

With these principles of law in mind, we now address Block's contentions on appeal.

## ADEQUACY OF SEARCH

Block first essentially argues that the City failed in its burden to establish that it conducted adequate searches in response to her public records requests.[11] More specifically, she contends that the City's searches were inadequate because she subsequently obtained responsive records either "from other source[s]" or "from the City in response to other requests ten months to two years after the City told [her] all responsive records had been produced."[12] Because there are no genuine issues of material fact on the adequacy of the City's searches, the trial court properly granted the City summary judgment.

In Neighborhood Alliance of Spokane County v. Spokane County, the supreme court held that the adequacy of a search for public records under the PRA is the same as exists under the federal Freedom of Information Act.[13]

> Under this approach, the focus of the inquiry is not whether responsive documents do in fact exist, but whether the search itself was adequate. The adequacy of a search is judged by a standard of reasonableness, that is, the search must be reasonably calculated to uncover all relevant documents. What will be considered reasonable will depend on the facts of each case.

---

[10] Neigh. Alliance of Spokane County v. Spokane County, 172 Wn.2d 702, 714-15, 261 P.3d 119 (2011) (quoting RCW 42.17A.001) (citations omitted).

[11] Brief of Appellant at 22-27.

[12] Id. at 23.

[13] 172 Wn.2d 702, 719, 261 P.3d 119 (2011).

6

> When examining the circumstances of a case, then, *the issue of whether the search was reasonably calculated and therefore adequate is separate from whether additional responsive documents exist but are not found*.
>
> Additionally, agencies are required to make more than a perfunctory search and to follow obvious leads as they are uncovered. The search should not be limited to one or more places if there are additional sources for the information requested. Indeed, "the agency cannot limit its search to only one record system if there are others that are likely to turn up the information requested." This is not to say, of course, that an agency must search *every* possible place a record may conceivably be stored, but only those places where it is reasonably likely to be found.[14]

To establish that its search was adequate in a motion for summary judgment, "the agency may rely on reasonably detailed, nonconclusory affidavits submitted in good faith."[15] This evidence should describe the search and "establish that all places likely to contain responsive materials were searched."[16]

Whether a search is adequate "is separate from whether additional responsive documents exist but are not found."[17]

Here, the City relied on evidence that it submitted in support of its motion for summary judgment to show that its searches were adequate. This evidence included the declaration of Laura Kelly, the public records officer for the City.[18]

---

[14] Id. at 719-20 (emphasis added) (emphasis omitted) (citations omitted) (quoting Oglesby v. U.S. Dep't of Army, 287 U.S. App. D.C. 126, 920 F.2d 57, 68 (1990)).

[15] Id. at 721.

[16] Id.

[17] Id. at 720.

[18] Clerk's Papers at 28.

7

The evidence also included two declarations of Crystal Hill Pennington, the mayor of the City at the time of Block's two requests.[19] The court also considered the declarations of Block and her counsel.

We examine this evidence to determine whether the City bore its burden under the criteria stated in Neighborhood Alliance.

The Kelly declaration evidences the City's understanding that the scope of Block's December 2008 request was "broader in its scope [than her previous request concerning Karl Majerle] and required the City to conduct a thorough search."[20] The declaration goes on to document where responsive documents were likely to be found. Specifically, Kelly identified Public Works Director John Light, Mayor Crystal Hill Pennington, and Eileen Lawrence, the City's attorney, as the persons likely to have responsive records.[21] This declaration describes the gathering of the documents, review of them, preparation of an exemption log, and production of responsive documents to Block.[22]

There are also two declarations from the former mayor. The most relevant declaration is titled Declaration of Crystal Hill Pennington Regarding Cross-Motions for Summary Judgment.[23] In this declaration, she testifies that she

---

[19] Id.

[20] Id. at 201.

[21] Id. at 199, 203.

[22] Id. at 200-04.

[23] Id. at 167-72.

searched Majerle's personnel file for responsive records. She also directed Kelly to search the City's e-mail system for responsive documents. Further, she instructed John Light, the City Public Works Director, and a councilmember to search their e-mails and notes for responsive records. Additionally, she contacted the Snohomish County Sheriff's Department for responsive records because she had filed a theft report with that agency regarding the Majerle matter.

Significantly, the former mayor also detailed her search for responsive e-mails in her various e-mail accounts. These included an AOL account, her Blackberry device, and her professional e-mail for her outside employment. She further described the names and other search terms used in her searches. Thereafter, she reviewed all of her e-mails from the date of notification of the Majerle issue until the date the first request was received. She expressly testified:

> [I] reviewed all of my e-mails from the date that I was first notified of the Majerle credit card use issue until the date that the request was received. I had no e-mails to or from Majerle and do not recall Majerle ever using his City-provided e-mail account. Upon completion of my search, I provided all of the responsive records to City Attorney Cheryl Beyer for review prior to release to Block. I did not withhold any responsive records.[24]

This declaration goes on to describe similar actions in response to Block's second request in February 2009. These actions included a directive to Kelly to search again for e-mail to verify all responsive records were provided.

---

[24] Id. at 169.

9

We note that this declaration also describes technology difficulties that she had with some devices that she used. The following excerpt of her declaration describes the specifics:

> In order to preserve City records, I saved e-mails in my e-mail accounts under various City folders. I also sometimes sent e-mails to myself in order to save a copy and then would forward those e-mails to the City Clerk. I did this specifically to ensure that the e-mails would be properly retained and in order to provide a backup of records of particular importance.
>
> At various times before, during and after my tenure with the City, I experienced numerous incidents with my AOL e-mail and Blackberry accounts where I lost data and e-mails through no fault of my own. I have no way of knowing what specific data and records were lost during these incidents other than my vague recollection of e-mails I may have sent or received over the years. I am certain that at least two hundred e-mails, if not more, were lost from my AOL account based on my recollection of the amount of messages I had . . . .
>
> During the times relevant to this suit, AOL e-mail account users including myself did not have the ability to search for or within e-mail attachments. The search capability was limited to the e-mail itself.[25]

The question before us is whether this record established that the City's searches were "reasonably calculated to uncover all relevant documents," as the law requires.[26] We hold that it does.

Whether a search is reasonable generally depends on the facts and circumstances of each case.[27] In this case, however, reasonable persons could

---

[25] Id. at 171-72.

[26] Neigh. Alliance of Spokane County, 172 Wn.2d at 720.

[27] Id.

only conclude that the City's searches were reasonably calculated to uncover all relevant documents. Thus, the searches were adequate.

The declarations that we just described are both "reasonably detailed" and "nonconclusory," as the law requires.[28] Kelly's declaration establishes that, as the public records officer, she understood that the request required searching a broad scope of records. And it details whom she contacted to gather responsive documents. Further, this nonconclusory declaration supports the view the City searched "all places likely to contain responsive materials."[29]

Of particular interest here are the declarations of the former mayor, who was in office at the time of the two requests. The declaration titled "Declaration of Crystal Hill Pennington Regarding Cross-Motions for Summary Judgment" documents, in detail, her identification of who might have responsive documents. It further evidences her instructions to those people to search their records for responsive documents. This declaration also evidences her search of her various e-mail accounts.

As for her search for e-mails, this declaration specifies her search for responsive documents. Notably, this testimony specifies the names and other search terms used in her search. It also describes the second search following receipt of Block's February 2009 second request, including her directive to Kelly to search again for responsive e-mails.

---

[28] Id. at 721.

[29] Id.

11

This declaration also describes the technology difficulties that the former mayor had with certain devices she used. Among them were lost data and e-mails from her AOL account and Blackberry device.[30] Moreover, her AOL account had limited search ability.

Notably, Block fails to point to any evidence in this record that refutes any of this evidence of technical difficulties that Hill Pennington testified that she experienced. We must assume that there is no such evidence.

Block argues that the City failed in its burden to show that its searches were adequate. Specifically, she states, in part, in her opening brief:

> Block has proven the existence of several responsive records *that existed on the date of her request*, were not identified or produced to her by the City, and that Block subsequently obtained in response *to other record requests [to the City] or from other sources* showing they existed on the date of her request. Thus, Block need not show whether or not the search was reasonable to establish the City in fact did not produce a responsive record to her when it claimed it had given her all the records.[31]

At oral argument of this case, Block clarified her position. She argued that the fact that other responsive documents existed on the dates of her requests, documents that she obtained after the City produced documents and privilege logs in response to her two requests, is dispositive of the question of the adequacy of the City's searches. But that is not the law.

We start with the governing principle that the supreme court stated in Neighborhood Alliance. There, the court stated that "the issue of whether the

---

[30] Clerk's Papers at 171.

[31] Brief of Appellant at 25-26 (emphasis added).

search was reasonably calculated and therefore adequate is separate from whether additional responsive documents *exist* but are not found."[32] Thus, "'a search need not be perfect, only adequate.'"[33] That Block later obtained responsive documents either from the City or from other sources following the City's February 27, 2009 responses does not create a genuine issue of material fact for trial. The City was entitled to summary judgment on this issue.

Turning to Block's declaration that was before the court on the cross-motions of the parties, we see nothing in that document that creates a genuine issue of material fact regarding the adequacy of the City's search. The document generally evidences that she received either from the City or from other sources documents the City did not provide in response to her two requests. But, as we just stated, that does not create a genuine issue of material fact regarding the adequacy of the City's searches.

Significantly, Block's declaration does nothing to challenge the former mayor's testimony regarding the technical difficulties to which she testified in her declaration. Thus, to the extent Block could have argued that there was some lack of reasonableness with respect to the City's efforts to search all locations where documents were likely to be found, such an argument would be unsupported by any evidence in this record.

---

[32] Neigh. Alliance of Spokane County, 172 Wn.2d. at 720 (emphasis added).

[33] Id. (quoting Meeropol v. Meese, 252 U.S. App. D.C. 381, 790 F.2d 942, 956 (1986)).

Block also complains that this record is "clear that the City has never produced any email obtained from Hill or from her Blackberry responsive to these two PRA Requests."[34] She further complains that "it is equally clear that the City has not shown [that] it searched for or produced any of those records before it responded in February 2009."[35]

The former complaint appears to be nothing more than a variation on her argument that the fact that a document existed when a request was made means that the City's search for the document was inadequate. Not true, as we explained earlier in this opinion.

The latter complaint is simply untrue, as evidenced by testimony in the record specifying the former mayor's searches of her devices. Given there is no contrary evidence in this record, we must assume such evidence does not exist.

In sum, the City bore its burden to show that its searches for public records were adequate. Under CR 56, the burden then shifted to Block to show otherwise. She failed to do so. Accordingly, the trial court properly granted summary judgment to the City, as it was entitled to judgment as a matter of law.

Block argues that under Neighborhood Alliance, when an agency performs an adequate search, but fails to produce a responsive record, it violates the PRA. In Neighborhood Alliance, the scope of discovery in a PRA case was also an

---

[34] Brief of Appellant at 23.

[35] Id. at 24.

issue before the court.[36]  The court explained that an agency's reason for failing

to comply with the PRA was relevant when determining sanctions.[37]  It stated:

> An agency that sought clarification of a confusing request and in all
> respects timely complied but mistakenly overlooked a responsive
> document should be sanctioned less severely than an agency that
> intentionally withheld known records and then lied in its response to
> avoid embarrassment.  Discovery is required to differentiate
> between these situations.[38]

Block argues that this statement means that "[an] agency that performed

[a] reasonable search but 'mistakenly' overlooked a record would still be

sanctioned."  Thus, Block argues that if a responsive record existed, but was not

disclosed, the agency committed a per se PRA violation, even if the agency

adequately searched for the record.

We disagree.  As we discussed earlier, the Neighborhood Alliance court

explicitly stated that "the issue of whether the search was reasonably calculated

and therefore adequate is separate from whether additional responsive

documents exist but are not found."[39]  If the failure to disclose an existing record

were a per se violation, regardless of whether the agency's search was

adequate, the court would have said so.  Dictum in the opinion's discussion

about the scope of discovery does not persuade us to adopt the argument that

Block makes.

---

[36] Neigh. Alliance of Spokane County, 172 Wn.2d at 715-16.

[37] Id. at 717.

[38] Id. at 718.

[39] Id. at 720.

## WITHHELD AND REDACTED RECORDS

Block argues that the City failed in its burden to show that records that it withheld or redacted were exempt. We again disagree.

Agencies must produce any requested public record unless it falls within a specific, enumerated exemption.[40] The PRA states that these exemptions should be "narrowly construed."[41] Additionally, agencies must produce redacted versions of exempt documents, if "'redaction renders any and all exemptions inapplicable.'"[42]

It is the agency's burden to show that a redacted or withheld record was exempt.[43]

In this case, the disputed exemptions are the work product exemption and the attorney-client privilege.

Under RCW 42.56.290, an agency does not have to disclose attorney work product. Documents are attorney work product if they "are relevant to a controversy to which an agency is a party but which records would not be available to another party under the rules of pretrial discovery for causes pending

---

[40] Id. at 715; RCW 42.56.070(1).

[41] RCW 42.56.030.

[42] City of Lakewood v. Koenig, 182 Wn.2d 87, 94, 343 P.3d 335 (2014) (quoting Resident Action Council v. Seattle Hous. Auth., 177 Wn.2d 417, 433, 327 P.3d 600 (2013)).

[43] Gendler v. Batiste, 174 Wn.2d 244, 252-53, 274 P.3d 346 (2012) (quoting RCW 42.56.550(1)).

in the superior courts."[44]   Work product includes information gathered by attorneys and attorneys' legal research, theories, opinions, and conclusions.[45]

Under RCW 5.60.060(2)(a), the attorney-client privilege protects communications between a client and her attorney and the attorney's professional advice to the client.

*Block's First Request*

Block argues that the City failed to establish that the records it withheld in response to her first request were exempt.  We disagree.

Here, the City withheld and claimed as exempt 66 pages of documents, which it disclosed in its first "Privileged/Exemption/Redaction Log."  The log specifies the date, author, recipient, and subject matter of each document claimed to be exempt.  The log also cites authority for its claimed exemptions—the attorney-client privilege and work product doctrines.

For example, the log shows that the City claimed exemption for a November 7, 2008 e-mail from the City's insurance defense counsel on the Majerle matter to her legal assistant.  Similarly, the City claimed exemption for a November 6, 2008 e-mail with handwritten notes from insurance defense counsel to the same legal assistant.  The log notes that these e-mails regard "Majerle v. City of Gold Bar."  It is self-evident that these e-mails fall within the work product doctrine.  If there is a legitimate claim they do not, Block has failed to make it.

---

[44] RCW 42.56.290.

[45] Limstrom v. Ladenburg, 136 Wn.2d. 595, 609, 611, 963 P.2d 869 (1998).

17

Any reasonable reading of the privilege log shows that the claim to these exemptions is proper. Thus, the burden to show otherwise shifted to Block for summary judgment purposes.

Block failed in her burden to show any genuine issue of material fact regarding these records. If she believed the claims of exemption were invalid, she could have sought in camera review of these records. But she did not. Moreover, she has failed to call to our attention anything in this record where she provided evidence, not mere allegations, to show the existence of any genuine issue of material fact that the records were not exempt.

Block argues that the trial court should have ordered the City to provide redacted copies of the withheld records. Specifically, she argues that once she had received redacted copies, she could have determined whether to seek in camera review of the redacted portions. But Block fails to cite any authority indicating that this request is a necessary predicate to requesting an in camera review. And it is undisputed that she failed to request an in camera review of the documents the City withheld in response to her first request for public records.

Block argues that entirely withholding rather than redacting the records "was presumptively too great a withholding." She also argues, without citation to authority, that "[r]arely will every portion of a record be exempt, particularly in the context of attorney-client privilege or work product."

But if Block believed that the City's claimed exemptions were invalid because they were overbroad, she could have sought in camera review of the withheld documents. That would have allowed the court to determine whether

18

the documents contained any non-privileged information. But without in camera review, or any other support in the record, Block's arguments are mere speculation, insufficient to avoid summary judgment.

In sum, Block failed to show any genuine issue of material fact regarding claims of exemption. The City was entitled to summary judgment.

*Block's Second Request*

Block also argues that the City failed to establish that the portions of records it redacted in response to her second request were exempt. We disagree.

For Block's second request, the City did not entirely withhold records but rather provided redacted copies of them. Block believed that the City's claimed exemptions were invalid or overbroad and sought in camera review of the documents.

The trial court reviewed the unredacted version of these records and determined that the redactions were proper as work product or attorney client privilege. The court further determined that "the exemption logs correctly reflected the applicable exemptions."

Our review of the unredacted documents confirms that the redacted portions were privileged under either the attorney-client privilege or the work product doctrine. Thus, the City established that the redacted portions of the documents were privileged. And it is entitled to summary judgment on this issue.

## ADEQUACY OF EXEMPTION LOGS

Block next argues that the City failed to establish that its privilege logs were sufficient. Specifically, she argues that the privilege logs lacked a brief explanation of the claimed exemptions. We disagree.

"When an agency withholds or redacts records, its response 'shall include a statement of the specific exemption authorizing the withholding of the record (or part) and a brief explanation of how the exemption applies to the record withheld.'"[46] "The plain language of RCW 42.56.210(3) and our cases interpreting it are clear that an agency must identify 'with particularity the specific record or information being withheld and the specific exemption authorizing the withholding.'"[47]

The agency must do more than identify the record and the specific exemption—it must explain how the exemption applies to the record.[48] If merely identifying the record and the exemption were sufficient, it "would render the brief-explanation clause superfluous."[49]

---

[46] City of Lakewood, 182 Wn.2d at 94 (quoting RCW 42.56.210(3)).

[47] Id. (quoting Rental Hous. Ass'n of Puget Sound v. City of Des Moines, 165 Wn.2d 525, 537–38, 199 P.3d 393 (2009)) (emphasis omitted).

[48] Sanders, 169 Wn.2d at 846.

[49] Id.

There are limited circumstances where a brief explanation is unnecessary. Some exemptions categorically "exempt 'without limit a particular type of information or record.'"[50] "[W]hen it is clear on the face of a record what type of information has been redacted and that type of information is categorically exempt, citing to a specific statutory provision may be sufficient."[51]

For example, RCW 42.56.230(5) exempts "Credit card numbers, debit card numbers, electronic check numbers, card expiration dates, or bank or other financial account numbers" from disclosure. If an agency states that a debit card number has been redacted and cites this provision, no further explanation is necessary.[52]

But the agency must not shift the burden "to the requester to sift through the statutes cited by the [agency] and parse out possible exemption claims."[53] Instead, "the agency must provide sufficient explanatory information for requestors to determine whether the exemptions are properly invoked."[54] In other words, "The log should include the type of information that would enable a

---

[50] City of Lakewood, 182 Wn.2d at 95 (quoting Resident Action Council, 177 Wn.2d at 434).

[51] Id.

[52] Id.

[53] Id.

[54] Id.

records requester to make a threshold determination of whether the agency properly claimed the privilege."[55]

An agency violates the PRA by failing to provide an adequate explanation.[56]

As described earlier, the City produced two privilege logs in response to Block's requests. The first log deals with the 66 pages of records withheld from the response to Block's first request.[57] The second log describes the 29 pages of documents that the City redacted in response to Block's second request.[58] Both logs adequately allowed Block to make threshold determinations about the validity of the claimed exemptions.

*Withheld Documents*

This record shows the City's claim of exemption for each of the withheld documents at Clerk's Papers 535 to 538. As described earlier, the log shows that the City claimed exemption for e-mails that its counsel sent to her legal assistant. Similarly, the City claimed exemption for a document described as "undated typed notes of City Insurance Defense Attorney Eileen Lawrence re Case analysis."[59] These descriptions allow a requester to make a threshold

---

[55] Gronquist v. Dep't of Licensing, 175 Wn. App. 729, 744, 309 P.3d 538 (2013).

[56] Sanders, 169 Wn.2d at 846.

[57] Clerk's Papers at 534-38.

[58] Id. at 539-44.

[59] Id. at 536.

determination that the documents are exempt as claimed because they are attorney work product.

We have carefully examined each of the other descriptions contained in the log at Clerk's Papers 535 to 538. Similarly to the descriptions that we just discussed, they all allow a requestor to make a threshold determination whether the claim of exemption is proper. Thus, the City's privilege log is adequate.

Block argues that further explanation of the basis of the claim for exemption was required. In doing so, she relies on Sanders v. State.[60] That case is distinguishable.

There, the court found that the agency failed to offer a sufficient explanation for the claimed exemption.[61] That case involved RCW 42.56.290, which exempts documents relating to a "controversy" that the agency is a party to, if the records would not be discoverable. A "controversy" is litigation or anticipated litigation.[62] This exemption includes attorney work product and attorney-client privilege.[63]

In Sanders, the agency claimed that it had offered a brief explanation by "identifying each withheld document's author, recipient, date of creation, and broad subject matter along with [citing the controversy exemption]."[64] But the

---

[60] 169 Wn.2d 827, 240 P.3d 120 (2010).

[61] Id. at 845-46.

[62] Soter v. Cowles Pub. Co., 162 Wn.2d 716, 732, 174 P.3d 60 (2007).

[63] Id. at 734.

[64] Sanders, 169 Wn.2d at 845.

23

agency's response lacked a true explanation. The supreme court noted, "[t]he identifying information about a given document does not explain, for example, why it is work product under the PRA's 'controversy' exemption."[65] The court also noted that the log did not specify which controversy caused the document to fall under the controversy exemption.[66] The court held that this was insufficient.[67]

The privilege log in this case does not resemble the log in Sanders. In Sanders, one flaw with the agency's response was that it did not specify the controversy that caused the document to be exempt.[68] In contrast, the privilege log here does identify the specific controversy. The log frequently states documents pertain to "Majerle v. City of Gold Bar" or makes other references to that controversy.

For example, the description in the log of the November 2008 e-mails makes it patently clear that they were communications among counsel on the Majerle claim. This information allowed Block to make a threshold determination about whether the e-mails were privileged. That is distinguishable from the log in Sanders, where Sanders could not make a threshold determination whether the claim of exemption was proper.

---

[65] Id. at 846.

[66] Id.

[67] Id.

[68] Id.

Block argues that the City did not explain how any of the claimed exemptions applied to records that existed but that it did not disclose by February 27, 2009. This argument is based on the false legal premise that the City's search was inadequate. We rejected that assertion earlier in this opinion. Accordingly, we need not address this argument any further.

In sum, the City bore its burden to show that its privilege log for the 66 items claimed as exempt in its first log was adequate. There was no genuine issue of material fact for trial. Summary judgment in favor of the City on this issue was proper.

*Redacted Documents*

The City's privilege log for the documents it redacted in response to Block's second request is also adequate. The second privilege log is similar to the first, but it contains additional brief explanations.

For example, the log notes that the City redacted content in a January 15, 2009 e-mail from the City's attorney to the City Clerk. Apart from citing the exemption, it also includes a brief explanation, stating "content is attorney advice to client." Similarly, when the City redacted content from an e-mail the mayor sent to the City's attorney, the log notes that the "content is requesting attorney advice," and thus privileged.

Thus, the log's descriptions of the redacted content and its brief explanations allowed Block to make threshold determinations about whether the claimed exemptions were valid. Accordingly, the log was adequate, and the City is entitled to summary judgment on this issue.

## ATTORNEY FEES

Block argues that she is entitled to attorney fees on appeal. Because she does not prevail on appeal, we disagree.

The PRA awards "[a]ny person who prevails against an agency . . . all costs, including reasonable attorney fees."[69] The attorney fees awardable under the PRA include appellate fees.[70]

Here, we reject all of Block's arguments on appeal. Accordingly, she is not entitled to recover attorney fees.

We affirm the trial court's grant of summary judgment to the City and its denial of partial summary judgment to Block. We deny Block's request for attorney fees on appeal.

_Cox, J._

WE CONCUR:

_Appelwick, J._          _Becker, J._

---

[69] RCW 42.56.550(4).

[70] Resident Action Council, 177 Wn.2d at 447.