IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | |
|---|---|
| UNDIVIDED MEDIA LLC, a Washington limited liability company, | No. 87628-7-I |
| Appellant, | DIVISION ONE |
| v. | UNPUBLISHED OPINION |
| CITY OF SEATTLE, | |
| Respondent. | |

COBURN, J. — After providing a partial installment of responsive records, the City of Seattle took nearly three additional months to complete unDivided Media LLC's finite request for a city councilmember's communication records over a 10-hour period. unDivided Media sued the City for violations of the Public Records Act (PRA), chapter 42.56 RCW. The parties filed cross motions for summary judgment. The trial court granted the City's motion and denied unDivided Media's motion. unDivided Media appeals, arguing that the City (1) failed to provide a reasonable time estimate for the first installment of records, (2) failed to provide a reasonable time estimate for the second records installment, and (3) was not reasonably diligent in its response to the records request. We disagree with unDivided Media's first contention but agree that undisputed facts establish that City's second installment estimate was unreasonable and that the City failed to handle the request with reasonable diligence as a matter of law. Accordingly, we affirm in part, reverse in part, and remand for the trial court to enter

partial summary judgment in favor of unDivided Media, to award reasonable attorney fees, and to consider unDivided Media's request for an award of daily penalties.

FACTS

On June 21, 2023, unDivided Media owner Brandi Kruse submitted a public records request to the City's legislative department for 10 hours of communication records involving city councilmember Andrew Lewis. Specifically, unDivided Media requested records created, sent, or received on June 6, 2023 between 12 p.m. and 10 p.m. Pacific Time that included "[a]ll text messages sent to and from," "[a]ll voicemails left on," and a list of ingoing and outgoing calls from Lewis' city-issued cell phone as well as "[a]ll emails" with any email attachments sent to and from Lewis' city-issued email. The request was received by the legislative department's public disclosure officer (PDO) Matthew Jaeger.

Also on June 21 Jaeger sent a records preservation notice to the public disclosure liaison at Lewis' office, Maliq Phakdymanivong. At this time, Jaeger had 29 additional open or active records requests in process. He was the only PDO in the legislative department and the only person responding to records requests on behalf of the legislative department. The position for the legislative department's designated alternate PDO was vacant and had been since March or April 2023. The City had approximately 90 PDOs assigned to different departments.

On June 27 Scheereen Dedman was hired as city clerk and direct supervisor of Jaeger. Dedman managed the public disclosure office for the legislative department, and her supervision responsibilities were limited to overseeing the PDO within the legislative department.

On June 28 Jaeger sent a letter to Kruse informing her that an initial installment of requested records would be provided around August 18, 2023. By this time, Jaeger had received 973 records responsive to unDivided Media's request. Jaeger primarily based the August 18 estimate on his current workload and placed unDivided Media's request "at the end of the line" of previously received requests that he was actively working on. Based on his experience and knowledge, Jaeger estimated he could respond to about three records requests per week and at this time, "it would have been six, seven weeks out." Jaeger considered current PDO staffing of the legislative and other departments as well as the number of city personnel involved. Jaeger also accounted for the possible amount of time it would take for him to review the records responsive to unDivided Media's request. Though Jaeger was used to "a three- to four-week turnaround" when there are two PDOs working on records requests, it was not unusual for him to have a six- to eight-week turnaround on requests when he was the only PDO working in the department.

From July 13 to July 24, Jaeger was out on temporary leave for a family member's hospitalization. His workload was not covered while he was out. When Jaeger returned from leave, "there were 10 additional records requests that required attention." Despite this, on August 18, 2023, Jaeger notified Kruse that the first installment of 578 responsive records was ready and would be provided within two business days upon payment of a $1.25 invoice. Due to the volume of records requests he was processing, Jaeger required an additional day to make the records available.

Kruse downloaded the first installment on August 24, 2023. This same day, Jaeger informed her that a second installment would be provided on November 10,

3

2023. At this point, Jaeger was processing more than 50 open requests for responsive records and for any potential exemptions that would require redaction and the creation of an exemption log.

Jaeger was out of the office for two weeks starting the last week of September. He returned to the office on October 6. Jaeger's supervisor Dedman provided some back-up coverage for about a week during this period.

After Jaeger provided the second installment estimate of November 10, Kruse asked Jaeger why the City required nearly six months to complete her request and offered to attempt to narrow the request to speed up production. Based on her experience in making hundreds of public records requests to the City and other governmental entities, Kruse characterized the City's November estimate as "highly unusual … given the very narrow nature of the request." Jaeger explained that the City needed until November 10 due to staffing shortages. He did not respond to Kruse's offer to attempt to narrow her request.

Kruse also reached out to city councilmember Sara Nelson in September for her perspective as to the City's response. Nelson apparently sent an email to Kruse expressing surprise at the amount of time it was taking to get a response to unDivided Media's request and that Nelson's office typically requires that records are produced in three weeks.[1]

---

[1] The actual email is not in the record before us. The record refers to unDivided Media's exhibits related to Nelson's deposition that were included with unDivided Media's motion for summary judgment but were not designated in the clerk's papers. The City does not dispute unDivided Media's assertion as to the substance of Nelson's email and also cites to Nelson's deposition answers about the email.

On October 20 unDivided Media sued the City under the PRA. About two weeks later, in the week leading up to November 10, Jaeger reviewed the second installment of 395 responsive records. On November 9 Jaeger notified Kruse that the remaining 395 records were ready for disclosure upon invoice payment. The City released the records to unDivided Media the following day upon its payment of the $1.25 invoice.

In March 2024 the City moved for summary judgment dismissal of unDivided Media's lawsuit. unDivided Media filed a response in opposition and a cross-motion for summary judgment.

As to whether there was a normal time period for responding to a certain request, Jaeger testified that "it changes on the type of request" rather than "[t]he straight number of records." He continued, "I don't know what the records are until I review the records. And I think that the estimates were perfectly reasonable." Public disclosure liaison Phakdymanivong, like Jaeger, did not consider unDivided Media's request particularly complex or extensive. When Phakdymanivong received the records request, it came with a form sheet that included a deadline to respond to the legislative department within about two weeks to a month from the date he received the request.

After Dedman was hired, she took time to determine whether or how to combine the alternate PDO position with one that would also serve as manager to the legislative department's boards and commission unit. Dedman testified on May 22, 2024:

> I'm not sure as to why [the position was] not [advertised] prior to me. When I started [on June 27, 2023], I just had a list of positions. Well, I had a lot to learn and so in the list of duties, it wasn't the highest of priority to fill because I was still learning exactly what the needs for that unit are.
> And unfortunately, due to staffing needs, once I've determined that it was – yeah, it was a position that I would like to combine with another unit that I failed to mention. Oh my gosh, I'm so sorry. We have a boards and commission manager. And so I want to combine.

I wanted that position to be able to serve both of those units and that took some time to come up with the job description to, you know, work out what the duties would be. So unfortunately, it's just more so with everything moving at the pace of government, I put up air quotes, the pace of government.

Then that's why today I just had a conversation, you know, with HR about how we can proceed to fill that position.

Dedman said that the legislative department "just ha[s] the one [PDO] and the vacant position who would do any responding." According to Jaeger, having someone in the alternate PDO position would have lessened his workload. Dedman testified that while there was a time she provided back-up coverage for Jaeger, "if I did any sort of thing during that timeframe, I'm not really aware because I'm not very familiar with the job. I couldn't even tell you the dates I did it, but it was for about a week."

The City also submitted testimony from Julie Kipp, city manager for the Citywide Public Records Act Program,[2] who testified that Jaeger was the employee dedicated to responding to public records requests for the legislative department. Kipp continued, "[Dedman] will sometimes act as, like, a backup if, like, to send out a 5-day. I don't know – I believe I've worked with her once to – while [Jaeger] was out to try to move some process along, but I can't remember the details of exactly what she needed."

The trial court granted summary judgment in favor of the City, dismissing unDivided Media's claims. unDivided Media appeals.

---

[2] The portion of Kipp's testimony in the record on appeal does not include evidence of her title, but both parties in their briefing refer to Kipp as the city manager of the "Citywide Public Records Act Program."

6

DISCUSSION

Legal Principles

The PRA mandates all state and local agencies to disclose any requested public record unless a specific exemption under the Act or another statute applies. Cantu v. Yakima Sch. Dist. No. 7, 23 Wn. App. 2d 57, 78, 514 P.3d 661 (2022) (citing Progressive Animal Welfare Soc'y v. Univ. of Wash., 125 Wn.2d 243, 250, 884 P.2d 592 (1994) (plurality opinion)); RCW 42.56.070(1). The purpose of the Act is to increase governmental transparency and accountability by providing access to public records for Washington citizens. John Doe A v. Wash. State Patrol, 185 Wn.2d 363, 371, 374 P.3d 63 (2016). We liberally construe the PRA to promote the public's interest in full access to public records. SEIU Healthcare 775NW v. Dep't of Soc. & Health Services, 193 Wn. App. 377, 400, 377 P.3d 214 (2016) (citing RCW 42.56.030).

"The PRA provides a cause of action for two types of violations: (1) when an agency wrongfully denies an opportunity to inspect or copy a public record, or (2) when an agency has not made a reasonable estimate of the time required to respond to the request." Andrews v. Wash. State Patrol, 183 Wn. App. 644, 651, 334 P.3d 94 (2014) (citing RCW 42.56.550(1), (2)).[3] An agency's failure to respond to a records request with reasonable diligence amounts to a constructive wrongful denial of a request in violation of the PRA. Cantu, 23 Wn. App. 2d at 88, 93-94. Courts owe no deference to an agency's interpretations of the PRA. O'Neill v. City of Shoreline, 170 Wn.2d 138, 149, 240 P.3d 1149 (2010). Instead, in an action to enforce the PRA, the agency bears the burden of proof to show that it acted reasonably or that the estimated response time

---

[3] RCW 42.56.550 has been amended since this court's decision in Andrews, but the relevant language has not changed.

7

it provided was reasonable in compliance with the PRA. Cantu, 23 Wn. App. 2d at 79-80; Andrews, 183 Wn. App. at 651; RCW 42.56.550(1), (2).

A determination of "whether an agency complie[d] with the PRA is a fact specific inquiry and must be decided on a case-by-case basis." Andrews, 183 Wn. App. at 653. In a PRA case, the trial court "may conduct a hearing based solely on affidavits." RCW 42.56.550(3). Where, as is applicable here, a PRA case presents a question of law that was decided by the trial court solely based on documentary evidence and legal arguments, an appellate court's review is de novo. Gronquist v. Dep't of Licensing, 175 Wn. App. 729, 742, 309 P.3d 538 (2013); see RCW 42.56.550(3).

In a PRA case, either party may move for summary judgment under CR 56[4] if the underlying facts are not in dispute. Cantu, 23 Wn. App. 2d at 80 (citing CR 56(c)); see also West v. Dep't of Licensing, 182 Wn. App. 500, 505, 331 P.3d 72 (2014) ("Public Records Act cases may be decided on summary judgment.") (citing Spokane Rsch. & Def. Fund v. City of Spokane, 155 Wn.2d 89, 106, 117 P.3d 1117 (2005)).

"[S]ummary judgment is generally appropriate only if there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law." Cantu, 23 Wn. App. 2d at 80 (citing Keck v. Collins, 184 Wn.2d 358, 370, 357 P.3d 1080 (2015)). That is, where reasonable persons could reach only one conclusion from the evidence. Andrews, 183 Wn. App. at 651. Notably, in the instant case, the parties agree that the material facts as to the legal issues on appeal have been fully developed and are not in dispute.

---

[4] Standard civil procedural rules apply to PRA lawsuits. Rufin v. City of Seattle, 199 Wn. App. 348, 361, 398 P.3d 1237 (2017) (citing Spokane Rsch. & Def. Fund v. City of Spokane, 155 Wn.2d 89, 104, 105, 117 P.3d 1117 (2005)).

We review a trial court's summary judgment order de novo, engaging in the same inquiry as the trial court. Id. at 650 (citing Folsom v. Burger King, 135 Wn.2d 658, 663, 958 P.2d 301 (1998)). At the summary judgment stage, a party moving for summary judgment has the burden of showing there is no genuine issue of material fact. City of Fife v. Hicks, 186 Wn. App. 122, 131, 345 P.3d 1 (2015). "A material fact is one on which the outcome of the litigation depends in whole or in part." Id. If the moving party meets this burden, the nonmoving party must present evidence to show that material facts remain in dispute. Id. at 132. The nonmoving party cannot rely on speculation, conclusory statements, or argumentative assertions but must provide "specific facts which sufficiently rebut the moving party's contentions" to demonstrate a genuine issue as to a material fact. White v. State, 131 Wn.2d 1, 9, 929 P.2d 396 (1997); Block v. City of Gold Bar, 189 Wn. App. 262, 269, 355 P.3d 266 (2015) (citing CR 56(e)). "If the nonmoving party fails in this, summary judgment is proper." Hicks, 186 Wn. App. at 132. In reviewing a record on summary judgment, we view any reasonable inferences in the light most favorable to the nonmoving party and consider only the evidence that was before the trial court. O'Dea v. City of Tacoma, 19 Wn. App. 2d 67, 79, 493 P.3d 1245 (2021); Andrews, 183 Wn. App. at 650-51; RAP 9.12. We may affirm the trial court's order on any basis supported by the record. O'Dea, 19 Wn. App. 2d at 79.

Reasonable Time Estimate

unDivided Media challenges the City's estimated installment dates of August 18 and November 10, 2023. unDivided Media argues that it was unreasonable for the City to take more than a month to provide the first installment of records and to delay more than four months before producing the second (and final) installment. We affirm the trial

court's ruling that the August 18 estimate was reasonable but conclude that the record establishes that the November 10 estimate was unreasonable as a matter of law.

## A. First Installment Estimate of August 18, 2023

unDivided Media avers that the City's initial estimate of August 18, 2023 was unreasonable because it was not based on a consideration of all the factors enumerated in the City's internal policy that may affect response time[5] and it exceeded the City's standard maximum production time of two to four weeks.

---

[5] unDivided Media cites section 5.3.2 of the Multi-Departmental Administrative Rules (MDAR) 17-0002, the City's internal policy effective July 23, 2017 regarding public record responses under the PRA. Section 5.3.2 states:

> when the City receives a public records request, the PDO will determine a reasonable estimate of time within which the City will respond to the request, factoring in the nature, volume, and availability of the requested records; the amount of time necessary to respond to a particular request and its effect on the amount of PDO and non-PDO staff time that can be devoted to responding to the requests of other requestors; and the impact on essential City functions. Specific factors that may affect the response time estimate include, but are not limited to:
>
> (a) Number of pending requests from the same requestor;
> (b) Volume of records requested;
> (c) Complexity or ambiguity of the request;
> (d) Requests for underlying metadata;
> (e) Access to database or electronic system records;
> (f) Information Technology (IT) staff involvement;
> (g) Records not easily identified, located, and/or accessible;
> (h) Current PDO staffing;
> (i) Current staffing of any involved City departments;
> (j) Research by City staff;
> (k) Amount of time needed by City staff who are not primarily responsible for public disclosure processing;
> (l) Number of department personnel or other City departments involved;
> (m) Third-party notice;
> (n) Complex review to determine if content is exempt;
> (o) Extensive and complicated electronic redaction;
> (p) Legal review;
> (q) Resolving issues related to retention of responsive records; and/or
> (r) Grouped requests.

Under the PRA, agencies must provide a "'reasonable' estimate, not a precise or exact estimate, recognizing that agencies may need more time than initially anticipated to locate requested records." Andrews, 183 Wn. App. at 652; see RCW 42.56.520; WAC 44-14-04003(6). "To provide a 'reasonable' estimate, an agency should not use the same estimate for every request" but "roughly calculate the time it will take to respond to the request." WAC 44-14-04003(7). There is no standard amount of time that is allowed to fulfill a request. Id. Thus, reasonable estimates should vary. Id. Time to "respond" can include, for example, time to process the request, such as locating and assembling records, redacting records, determining if disclosure exemptions apply, or making an installment available. Id.

As stated above, the agency has the burden of showing that the time estimate it provided was reasonable. RCW 42.56.550(2). We review the reasonableness of a time estimate in the context in which it was provided. See, e.g., Wade's Eastside Gun Shop, Inc. v. Dep't of Lab. & Indus., 185 Wn.2d 270, 289, 372 P.3d 97 (2016) (holding an agency's 232-day response time unreasonable when it was previously determined that no exemptions applied). "[W]hether an estimate is reasonable necessarily must be based on a forward-looking evaluation at the time of the estimate, not on a backward-looking evaluation after the fact." Freedom Found. v. Dep't of Soc. & Health Services, 9 Wn. App. 2d 654, 667, 445 P.3d 971 (2019).

Here, unDivided Media presented testimony from PDO Jaeger that in determining the August 18 estimate he did not consider certain factors outlined in the City's policy that may affect response time, including the location of the records or whether they were easily identified or accessible, research by City staff, amount of time

11

needed by City staff who were not primarily responsible for public records requests, third-party notice, legal review, issues related to the retention of responsive records, or grouped requests. However, PDO Jaeger's purported deviation from internal expectations regarding the determination of response time to a public records request does not by itself create a cause of action under the PRA.

Under RCW 42.56.100, agencies must "adopt and enforce reasonable rules and regulations" consistent with the intent of the PRA to "provide for the fullest assistance to inquirers and the most timely possible action on requests for information." The purpose of RCW 42.56.100 is to safeguard and facilitate timely access to public records and does not permit an agency to promulgate rules that undermine the express intent of the PRA and delay timely action on public records requests. Kilduff v. San Juan County, 194 Wn.2d 859, 871, 453 P.3d 719 (2019). We have previously observed that the purpose of the PRA is to keep agencies accountable in responding to public records requests with reasonable thoroughness and diligence, not to impose "a mechanically strict finding of a PRA violation whenever [internally imposed] timelines are missed." Andrews, 183 Wn. App. at 653. In this vein, though conduct in relation to internal policies and procedures may be considered as evidence relevant to the question of the reasonableness of an agency's response estimate, an agency's deviation from internal guidance or expectations in determining such an estimate does not alone establish liability under the PRA. See id. at 651-53; C.S.A. v. Bellevue Sch. Dist. No. 405, 32 Wn. App. 2d 544, 569 n.26, 557 P.3d 268 (2024), review denied, 4 Wn.3d 1019 (2025), cert. denied, 146 S. Ct. 181 (2025).

According to Jaeger's undisputed testimony, he individually worked on requests for the legislative department in the order that they were received. Jaeger explained he placed unDivided Media's request "at the end of the line" of currently pending requests and estimated the time it would potentially take to complete the preceding requests and unDivided Media's specific request. We have previously held that an agency's determination of a time estimate is reasonable where it was based on a consideration of how long it will take for the agency to review records for a request while also processing other PRA requests. Freedom Found., 9 Wn. App. 2d at 666-67;[6] see also Rufin v. City of Seattle, 199 Wn. App. 348, 358, 398 P.3d 1237 (2017) (holding that the city responded diligently in its response to PRA request that took 65 days to complete where it placed the request in the queue along with other requests and was working on other requests). The record thus establishes that Jaeger reasonably determined the August 18 estimate based on a consideration of the time he needed to complete the request along with other requests as the sole PDO in the legislative department.

unDivided Media asserts that it should not have taken Jaeger longer than two to four weeks to respond to its request. But Jaeger testified it was not unusual for him to need six to eight weeks to respond to a records request when he was the only PDO working in the department.

unDivided Media relies on councilmember Nelson's opinion that it was surprising how long the City was taking to respond to unDivided Media's request and that Nelson's office typically requires responses be made to records requests in three weeks. This,

---

[6] The court in Freedom Foundation, 9 Wn. App. 2d at 662, 665-67, considered the reasonableness of a time estimate under former RCW 42.56.520 (2010), which is not materially different from the current statute for the purposes of this opinion's analysis. Compare LAWS OF 2010, ch. 69, § 2 with LAWS OF 2017, ch. 303, § 3.

unDivided Media argues, is evidence that the City's estimated time for response was not reasonable. However, Nelson conceded that she has never served as a PDO or reviewed records collected in response to a public records request for exemptions, third-party notices, or any other relevant considerations under the PRA. Nelson also acknowledged she was not aware how PDO Jaeger or the legislative department prioritized records requests. Additionally, Nelson did not know how many requests were ahead of unDivided Media's request or the volume of such requests. unDivided Media also refers to public disclosure liaison Phakdymanivong's testimony, arguing that his testimony indicated "the normal turnaround time for the records requests of this nature would have been between two (2) to four (4) weeks." But Phakdymanivong testified to the timeline he understood he had to provide responsive records to Jaeger, and not to a reasonable estimate for the legislative department to produce records to unDivided Media.

unDivided Media avers that at minimum the City should have provided an explanation to support its time estimate for its narrow request. However, the PRA does not require an agency to provide a records requestor an explanation for its time estimate for disclosure.[7] <u>Andrews</u>, 183 Wn. App. at 652 (citing <u>Ockerman v. King County Dep't of Developmental & Env't Services</u>, 102 Wn. App. 212, 217-18, 6 P.3d 1214 (2000)).

---

[7] An agency may still opt to provide an explanation for an estimate as a best practice. <u>See</u> WAC 44-14-04003(7) ("While not required, … to avoid unnecessary litigation over the reasonableness of an estimate, an agency could briefly explain to the requestor the basis for the estimate in the initial response. The explanation need not be elaborate but should allow the requestor to make a threshold determination of whether he or she should question that estimate further or has a basis to seek judicial review of the reasonableness of the estimate.") (citing <u>Ockerman</u>, 102 Wn. App. at 214).

Whether an agency has provided a reasonable estimate of time generally depends on the facts and circumstances. In this case, however, the City bore its burden to show that its first installment estimate of August 18 was reasonably based on the time needed to respond to pending requests as well as unDivided Media's request. Under CR 56, the burden then shifted to unDivided Media to show otherwise, which it failed to do. Thus, we hold that a reasonable factfinder could only conclude on this record that the City's first installment estimate was reasonable. Accordingly, the trial court properly granted summary judgment to the City on this basis, as it was entitled to judgment as a matter of law. See Block, 189 Wn. App. at 274-78; Andrews, 183 Wn. App. at 651, 653-54.

B. *Second Installment Estimate of November 10, 2023*

unDivided Media contends that the record presents no genuine dispute that the City's second installment estimate of November 10, 2023 was unreasonable as a matter of law. Because the City provides no evidence to establish the reasonableness of its November 10 estimate for the completion of unDivided Media's records request, we agree.

An agency is entitled to a reasonable amount of time to produce responsive records under the PRA and is therefore not required to strictly comply with its internal production dates. O'Dea, 19 Wn. App. 2d at 90; Andrews, 183 Wn. App. at 653. The City's extension of its estimated response to unDivided Media's request thus does not amount to a per se PRA violation. See Andrews, 183 Wn. App. at 650, 653; C.S.A., 32 Wn. App. 2d at 569 n.26. Nonetheless, the City has the burden to prove that its second estimate was reasonable. RCW 42.56.550(2); Gronquist v. Dep't of Corr., 32 Wn. App.

15

2d 617, 629-31, 557 P.3d 706 (2024), review denied, 4 Wn.3d 1011 (2025). Extended estimates are appropriate when circumstances have changed. Gronquist, 32 Wn. App. 2d at 629 (citing Andrews, 183 Wn. App. at 652); WAC 44-14-04003(7).

The City presented no evidence of the changed circumstances that resulted in the extended estimate of nearly three months. The City's own evidence showed that when Kruse inquired about the extended estimate of November 10, PDO Jaeger attributed it to staffing shortages. Yet, when Jaeger provided the August 18 estimate, he had already accounted for how long it would take him to complete unDivided Media's request given his workload as the sole PDO for the legislative department. In addition to testifying that an eight-week response time was not unusual when he was the only one responding to records requests for the legislative department, Jaeger generally estimated he could respond to about three requests per week and explained he would address requests in chronological order. At most, considering Jaeger was individually handling 29 open requests when he received unDivided Media's request on June 21, 2023, this timeline would have placed the completion of the request sometime around the end of August or early September.

The record suggests that Jaeger received additional records requests after receiving unDivided Media's request. Jaeger received 10 of these requests in July upon his return from temporary leave. He testified that by around August 24, "at some point," he had "cleared 50 open requests." But the City provides no insight as to how these additional requests impacted Jaeger's otherwise standard chronological processing of requests such that it required him to estimate the next production date for unDivided Media's June 21 request as November 10. Because the City has the burden to establish

16

that its estimate was reasonable, any lack of evidence regarding circumstances warranting the extended estimate must be construed against it. See Gronquist, 32 Wn. App. 2d at 631.

Accordingly, we conclude that the City did not meet its obligation to show that the November 10 estimate was reasonable under the PRA. In a case where the parties have filed cross-motions for summary judgment, "[t]hough the reversal of a trial court's order granting summary judgment to one party does not mean that the other party's motion for summary judgment must be granted, this can be an appropriate remedy where the two motions take diametrically opposite positions on the dispositive legal issue and raise no issues of fact." Aaland v. CRST Home Solutions, LLC, 35 Wn. App. 2d 501, 519, 575 P.3d 1279 (2025), review denied, No. 104668-5 (Wash. Feb. 2, 2026). Accordingly, because no reasonable factfinder could find on this undisputed record that the City's decision to delay its response of remaining records to November 10 was reasonable, unDivided Media is entitled to summary judgment as a matter of law on this issue. See Block, 189 Wn. App. at 274; Andrews, 183 Wn. App. at 651. We reverse in part the trial court's summary judgment order and remand for entry of partial summary judgment in unDivided Media's favor.

Reasonable Diligence

unDivided Media next contends that uncontested facts show that the City did not respond to its request with reasonable diligence to provide the fullest assistance to its records request as required by the PRA.

Under the PRA, agencies must fulfill record requests in a manner that does not create "excessive interference" with the agency's "other essential functions of the

17

agency." RCW 42.56.100; WAC 44-14-04003(3). At the same time, agencies must provide the "'fullest assistance'" and the "'most timely possible action on requests for information.'" Freedom Found., 9 Wn. App. 2d at 673 (internal quotation marks omitted) (quoting Andrews, 183 Wn. App. at 651); see Mitchell v. Dep't of Corr, 164 Wn. App. 597, 607, 277 P.3d 670 (2011). An agency has the burden of establishing that it provided the fullest assistance to requestors and the timeliest possible action on records requests. Gronquist, 32 Wn. App. 2d at 629 (citing RCW 42.56.100). "In determining whether an agency acted promptly in producing responsive records we examine whether the agency's response was thorough and diligent." Freedom Found., 9 Wn. App. 2d at 673 (citations omitted). As referenced above, an agency's failure to diligently respond to a records request is unreasonable and amounts to a constructive wrongful denial of a request in violation of the PRA. Cantu, 23 Wn. App. 2d at 88, 93-94; see RCW 42.56.550(1).

unDivided Media argues that the City's failure to adequately staff the legislative department to respond to public records requests violated the City's internal policy[8] and rendered the City's conduct unreasonable under the PRA.

As stated above, an agency's deviation from its internal policies and procedures regarding the handling of public records requests does not create a cause of action under the PRA. See Andrews, 183 Wn. App. at 651-53; C.S.A., 32 Wn. App. 2d at 569 n.26. Where an agency does not strictly comply with internal expectations or timelines but otherwise acts reasonably diligently in responding to a public records request,

---

[8] unDivided Media cites section 4.2.1 of the City's public records disclosure policy, MDAR 17-0002 (effective July 23, 2017), which states that "[e]ach department shall have at least one designated PDO and at least one designated alternate PDO, the latter to carry out the PDO's functions when the PDO is not available due to vacation, sick leave, or otherwise."

courts should take a flexible approach that focuses on the thoroughness and diligence of the response in determining whether the agency's conduct is consistent with the PRA. See Andrews, 183 Wn. App. at 646, 653. To this end, "[a]n agency may produce records in installments but must make them with reasonable diligence." C.S.A., 32 Wn. App. 2d at 558 (citing RCW 42.56.080(2); Cantu, 23 Wn. App. 2d at 90).

A court conducts a fact-specific inquiry to determine whether an agency responded to a records request with reasonable thoroughness and diligence. Freedom Found., 9 Wn. App. 2d at 673 (citing Rufin, 199 Wn. App. at 358). "In determining whether an agency worked diligently on a request, 'we apply an objective standard from the viewpoint of the requester.'" C.S.A., 32 Wn. App. 2d at 564 (quoting Cantu, 23 Wn. App. 2d at 94). This standard contemplates the plaintiff's prior requests, communication that occurred between the requester and the agency, and the totality of the circumstances. Id. (citing RCW 42.56.100). As such, an agency's conduct in relation to its internal policies and procedures may be considered as evidence relevant to reasonableness under the PRA. See Andrews, 183 Wn. App. at 653; C.S.A., 32 Wn. App. 2d at 564 n.23. An agency cannot excuse an objective lack of diligence with evidence of administrative inconvenience, insufficient allocation of resources, or difficulty in producing records. Cantu, 23 Wn. App. 2d at 94-95; see C.S.A., 32 Wn. App. 2d at 568 (holding that school district's claims that it received an unprecedented number of public records requests and was short-staffed did not excuse its failure to produce requested records for a six-month period).

In the instant case, the City's internal requirement for departments to have an alternate PDO to provide coverage when the designated PDO is unavailable is evidence

of the staffing that the City deemed necessary to diligently respond to records requests under the PRA. See Multi-Departmental Administrative Rules (MDAR) 17-0002, § 4.2.1 (eff. July 23, 2017). The City does not dispute this and instead claims that it did provide the necessary back-up coverage for PDO Jaeger to maintain a diligent response to records requests during the period that unDivided Media's request was pending.

Turning to the record, it does not appear that PDO Jaeger's temporary unavailability in July negatively impacted his ability to respond to unDivided Media's request by the first installment estimate of August 18, 2023. However, Jaeger cited staffing shortages as the reason for the delayed completion of unDivided Media's request to November 10 and testified that additional PDO staffing would have lessened his workload. During Jaeger's two-week absence in September, which was after Jaeger provided the second installment estimate of November 10, Jaeger's supervisor Dedman provided back-up coverage for only about a week to the limited extent that she sent out initial five-day letters to new requests. Aside from her limited assistance with new requests, Dedman did not even know what Jaeger's duties entailed. Though Dedman testified she did not advertise the vacant alternate PDO position because she was assessing the needs of the unit and the possibility of combining the position with another position, the City's evidence provided no explanation for its failure to ensure in the meantime that the person providing back-up to the legislative department's PDO was properly trained to do more than send out five-day letters to new requests.

The City further proffered testimony from Dedman that she did not consider back-up coverage for public records requests as "the highest of priority" for the legislative department and attributed the time it took to address the gaps in the department's ability

to respond to records requests to "the pace of government." The City's inadequate allocation of resources, lack of priorities, and organizational obstacles is not a defense for its failure to diligently assist with records requests. See Cantu, 23 Wn. App. 2d at 94-95; see also RCW 42.56.152 (setting forth training requirements for public records officers and managers under the PRA).

Thus, the City has failed to meet its burden to show that it acted with reasonable diligence in producing the second installment of records responsive to unDivided Media's request. We therefore hold that no reasonable person could find on this record that the City provided the fullest assistance to unDivided Media during the time period that it waited for the second records installment as required by the PRA. Accordingly, unDivided Media is entitled to partial summary judgment as a matter of law. See Andrews, 183 Wn. App. at 650-51, 653-54. We thereby reverse in part the trial court's order granting the City's motion for summary judgment and remand for the court to enter partial summary judgment in unDivided Media's favor on this basis.

Daily Penalty and Attorney Fees

To the extent it is a prevailing party on appeal, unDivided Media requests attorney fees and costs and a daily penalty award under RCW 42.56.550(4). RCW 42.56.550(4) provides an award of "all costs, including reasonable attorney fees" to a requestor who prevails in establishing that an agency violated the PRA. The statute also provides courts the discretion "to award such person an amount not to exceed [$100] for each day that he or she was denied the right to inspect or copy said public record." RCW 42.56.550(4).

21

Where this court determines that an agency has violated the PRA, the proper remedy is to remand to the trial court for a determination of a reasonable attorney fee award and appropriate daily penalties. See C.S.A., 32 Wn. App. 2d at 570 (citing Neighborhood All. of Spokane County v. Spokane County, 172 Wn.2d 702, 728, 261 P.3d 119 (2011)). "[A]lthough an award of attorney fees to a prevailing party in a PRA action is mandatory, whether to award a penalty under RCW 42.56.550(4) is within the trial court's discretion." West v. Port of Olympia, 183 Wn. App. 306, 318, 333 P.3d 488 (2014) (citing Resident Action Council v. Seattle Hous. Auth., 177 Wn.2d 417, 428, 327 P.3d 600 (2013)). Accordingly, as required under RCW 42.56.550(4), we award unDivided Media attorney fees as the prevailing party on appeal consistent with this opinion. Because unDivided Media may be entitled under the PRA to attorney fees for legal services on remand to the trial court as well as fees on appeal, we remand this issue to the trial court with instructions to determine an appropriate award consistent with controlling case law and to exercise its discretion as to whether to award a penalty under RCW 42.56.550(4).

## CONCLUSION

We affirm in part, reverse in part, and remand with instructions for the trial court to enter partial summary judgment in favor of unDivided Media on the grounds that the City did not provide a reasonable time estimate for the disclosure of the second records installment and did not provide the fullest assistance in completing the production of requested records in violation of the PRA. We also remand for the trial court to hold further proceedings to award reasonable attorney fees below and on appeal and for

consideration of unDivided Media's request for daily penalties.

_Coburn, J._

WE CONCUR:

_____, ACJ